THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FRANCISCO ALGARIN, Defendant-Appellant.

First District (5th Division)   No. 1—87—3645

Opinion filed June 29, 1990.

Randolph N. Stone, Public Defender, of Chicago (Paul D. Bellendir, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, William D. Carroll, and Darlene White, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Defendant, Francisco Algarin, was charged with the child abduction (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(2)), aggravated kidnapping (Ill. Rev. Stat. 1987, ch. 38, par. 10—2(a)(5)), and aggravated unlawful restraint (Ill. Rev. Stat. 1987, ch. 38, par. 10—3.1) of an 11-year-old girl. Defendant was the girl's natural father but was never married to her mother. At a bench trial, the court granted defendant's motion for a directed finding on the child abduction charge. The court denied, however, defendant's motion for a directed finding on the aggravated kidnapping charge and, after hearing all the evidence, found defendant guilty of aggravated kidnapping and aggravated unlawful restraint. Before sentencing, the court vacated the unlawful restraint conviction and sentenced defendant to 10 years in prison for aggravated kidnapping. On appeal, defendant contends: (1) the trial court improperly denied his motion for a directed finding on the aggravated kidnapping charge; and (2) he was not proven guilty of aggravated kidnapping beyond a reasonable doubt. We reverse and remand on the first ground with no further need to determine the merits of the second ground.

This case involves the seizure of an 11-year-old girl by the defendant, her natural father. There is no dispute in the record that defendant is her biological father. This fact was also acknowledged by the trial court. However, he was never married to the child's mother and had not lived with the child or her mother at any time after her birth. Defendant had been incarcerated since the date of the child's birth and had never seen her except on two brief occasions within a few months prior to this occurrence. There was evidence, however, that he had written to the child from prison but no indication of how often. Although the right to custody of the child never was the subject of a court determination, the mother had physical custody of her at all times. At the time of the incident, the girl was living with the mother, her stepfather and two sisters and brother in an apartment on Cortez Street in Chicago.

The State's evidence showed that the girl had briefly seen her father for the first time early in 1987, when she turned to look upon hearing him call out her name as she proceeded to enter her home. She did not then recognize who he was. Early in March 1987, she again saw defendant when he walked into a laundromat where she was standing with a friend and ordered her to accompany him, stating that her mother had given permission. Upon his persistence, she reluctantly acquiesced to his walking her home. When they arrived at her door, he told her to call out to her mother that she would be leaving with him. Instead, she ran inside and told her mother that defendant was bothering her. Her mother then admitted defendant into the home, where he then again insisted that the victim come away with him. When she refused, he left. Shortly thereafter, the child's mother called the police and informed them of what had happened.

The girl next encountered defendant on March 25, 1987. At about 2 a.m. on that day, Reinaldo, the child's stepfather, was awakened by someone pounding on his front door. When he opened the door, he saw defendant, who said that he had come to see his daughter. Reinaldo told him that the hour was too late, she was asleep and she had to go to school later that morning. Nonetheless, defendant forced his way in and saw his daughter asleep on the couch in the living room. Defendant awakened her by touching and kissing her. She began to cry and scream for her mother. Defendant told her that he wished to take her to his home for a while, stating that he was her father and that nobody could keep him from taking her with him.

Maria, the mother, was awakened by her screaming and came into the living room to investigate. When she saw defendant there, she gave him a "dirty look" and then went to call the police. When she

returned, defendant was telling the child to come with him. She continued to cry and refused. Maria then began arguing with defendant. Meanwhile, the child left the living room and went into the kitchen. Defendant followed her there. He grabbed her and told her that she was coming with him, "the good way or the bad way." She persisted in her refusal.

When the police knocked at the door, defendant opened his jacket to reveal a knife in his waistband as he warned Maria not to let the police know he was there. Maria then told the police that nothing was wrong and they left.

Defendant then urged Maria to give the child to him because she had three other children. When Maria refused, he replied that he would take her anyway.

While defendant was distracted, Maria opened the front door and attempted to flee the apartment with the child. Defendant chased after them and caught up with them outside. He grabbed the child and pulled his knife from his waistband. He then fled with her through various gangways, alleys, and backyards. At one point during the flight, the child heard her brother's godfather calling for her and she called out to him. Defendant then put his hand over her mouth to keep her from calling out again. When her brother's godfather appeared, defendant pulled his knife and attempted to stab him. The godfather then fled.

Eventually, defendant and the child arrived at a big fence. At about the same time, the child's uncle arrived and asked the defendant to leave the child. Defendant released her, climbed the fence and ordered her to follow him. When she refused, he left without her. The child then ran to her uncle.

At about 4:20 a.m., the police spotted defendant running without shirt or shoes and arrested him. During the arrest, he threatened to kill the police. The police searched him and the area where the victim was found but found no knife.

The defendant testified that in January of 1987, he first saw the victim coming out of school and called out her name. He knew that she was his daughter because someone had pointed her out to him. He then followed her to her home. When she arrived there, Maria, her mother, came out and called his name. He then left but returned later that evening with several gifts for his daughter, including a television, stereo, headphone, calculator and watch. Maria did not attempt to stop him from giving them to their daughter. He next returned to her home in February of 1987 when Maria allowed him to enter and give $20 to their daughter.

He arrived at his daughter's apartment at about 11 p.m. on March 24, 1987. He said that Maria had given him permission to take her overnight. When the child came out of the apartment, however, she was angry and suddenly took off down a gangway. Defendant then gave chase. As he was chasing her, two persons suddenly began chasing him. At one point during the chase, one fired a gun at him and the other pulled a knife on him. He was still running from these individuals when he was arrested.

Defendant was convicted and sentenced for aggravated kidnapping, which is a kidnapping, as defined in the kidnapping statute (Ill. Rev. Stat. 1987, ch. 38, par. 10—1), committed while armed with a dangerous weapon (Ill. Rev. Stat. 1987, ch. 38, par. 10—2(a)(5)).

■ The provisions of the kidnapping statute which relate to this appeal are:

"(a) Kidnaping occurs when a person knowingly:
***

(2) By force or threat of imminent force carries another from one place to another with intent secretly to confine him against his will, or
***

(b) Confinement of a child under the age of 13 years is against his will *** if such confinement is without the consent of his parent or legal guardian." (Ill. Rev. Stat. 1987, ch. 38, par. 10—1.)

Defendant contends that the trial court should have granted his motion for a directed finding on the aggravated kidnapping charge because as the victim's biological father, he is a parent under the kidnapping statute and cannot therefore be charged with the kidnapping of his own child. We agree with this contention.

■■ ■ The term "parent" is not defined by the kidnapping statute. Defendant urges that the term must be given its plain and ordinary meaning of father or mother related by blood because the kidnapping statute is not ambiguous. If the term were to be given this meaning, defendant would qualify as a parent. Alternatively, he suggests that if we conclude that the statute is ambiguous, we should be guided by the definition of "parent" in the Adoption Act (Ill. Rev. Stat. 1987, ch. 40, par. 1501 *et seq.*) and the Parental Right of Recovery Act (Ill. Rev. Stat. 1987, ch. 70, par. 601 *et seq.*). The Adoption Act defines parent as either "the father or mother of a legitimate or illegitimate child." (Ill. Rev. Stat. 1987, ch. 40, par. 1501(E).) The Parental Right of Recovery Act defines "parent" as "any natural or adoptive parent of a minor." (Ill. Rev. Stat. 1987, ch. 70, par. 602(4).)

Thus, defendant would be a parent under either of these acts.

■■ The State, on the other hand, contends that we should be guided by the definition of "parent" in the Juvenile Court Act. (Ill. Rev. Stat. 1983, ch. 37, pars. 701—1 *et seq.*) There, "parent" is defined as

> "the father or mother of a legitimate child, or the mother of an illegitimate child, and includes any adoptive parent. It also includes the father of an illegitimate child whose paternity has been established under the law of this or another jurisdiction." (Ill. Rev. Stat. 1985, ch. 37, par. 701—14.)[1]

The State argues that since defendant's paternity has not been adjudicated, he would not qualify as a legal parent. Further, the State suggests that where, as here, the parents are not married, there is a presumption, as under the child abduction statute (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(a)(3)), that the mother has legal guardianship and right to custody. The State contends that under the kidnapping statute, as under the child abduction statute, only the parent with a right to custody can consent to the taking of the child. Additionally, the State suggests that even without reference to any other statutes or authority, the child's mother in the present case is the, sole parent qualified to consent to a taking of this child since she is the only parent this child had ever known.

■■ We agree with defendant that the term "parent" in the kidnapping statute should be given its plain and ordinary meaning of father or mother related by blood. (See Black's Law Dictionary 1003 (5th ed. 1979) (defining "parent" as "[o]ne who procreates, begets, or brings forth offspring"); Webster's Third New International Dictionary 1641 (1986) (defining parent as "one that begets or brings forth offspring: FATHER [or] MOTHER" and tracing its root to the Latin, "parere," which means "to give birth to, beget, produce"); 11 The Oxford English Dictionary 222 (2nd ed. 1989) (defining "parent" as "a person who has begotten or borne a child; a father or mother"); 7 The New Encyclopaedia Britannica 754 (Micropaedia ed. 1974) (stating that in Western societies, the term "parenthood, with its several obligations, rests strongly on biological relatedness, that is, sexual reproduction").) Absent any ambiguity, language in a statute should be given its plain and ordinary meaning. (See *Maloney v. Bowers* (1986),

---

[1] It should be noted that this provision was amended, effective July 1, 1985, so that "parent" was defined as "the father or mother of a child." (Ill. Rev. Stat. 1985, ch. 37, par. 701—14.) The Juvenile Court Act of 1987 replaced the Juvenile Court Act, effective January 1, 1988, but continued to define "parent" as "the father or mother of a child." Ill. Rev. Stat. 1989, ch. 37, par. 801—3 (11).

113 Ill. 2d 473, 479, 498 N.E.2d 1102, 1104.) When the language is clear and unambiguous, courts will not read restrictions or enlargements into that language. (See *People v. Goins* (1988), 119 Ill. 2d 259, 265, 518 N.E.2d 1014, 1016.) When a statute contains language with an ordinary and popularly understood meaning, it is presumed that is the meaning intended by the legislature. *People v. Haywood* (1987), 118 Ill. 2d 263, 276, 515 N.E.2d 45, 51.

■ The State's contention that we must be guided by the Juvenile Court Act to determine the meaning of "parent" under the kidnapping statute is not well founded. First, the meaning of the term by itself as used in the kidnapping statute is clear and unambiguous and therefore does not justify a search beyond its four corners to ascertain its scope and meaning. Second, there is no affinity or mutuality of purpose between the Juvenile Court Act and the criminal felony statute setting forth the crime of aggravated kidnapping. Thus, there would be no greater reason to adopt the definition under it than under the Adoption Act (Ill. Rev. Stat. 1987, ch. 40, par. 1501(E)) or the Parental Right of Recovery Act (Ill. Rev. Stat. 1987, ch. 70, par. 602(4)) which would favor the defendant's position. (See *People v. Harman* (1984), 125 Ill. App. 3d 338, 345, 465 N.E.2d 1009, 1015.) Moreover, even if the Juvenile Court Act were to apply and a court determination of the biological paternity were required as under that act, that requirement would have been satisfied in this case. Here the paternity of the defendant was undisputed in the evidence and was acknowledged by the trial court, the court having explicitly found that this defendant was the natural father but having held that this factor alone was not dispositive under the aggravated kidnapping statute. Additionally, a contrary finding concerning defendant's biological parenthood clearly would have been against the manifest weight of the evidence since defendant's paternity was undisputed.

■ Similarly, the child abduction statute (Ill. Rev. Stat. 1987, ch. 38, par. 10—5) cannot predetermine the meaning of the word "parent" under the kidnapping statute. The fact that "parent" has a plain and unambiguous meaning which precludes reference outside of the four corners of the statute to ascertain its meaning applies to the child abduction statute as it does to the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 701—1 *et seq.*). Additionally, as used in the child abduction statute, the basic term, "parent," does not connote anything more than biological fatherhood or motherhood. Where a custodial interest, marriage, or legally adjudicated paternity becomes a consequential factor under its provisions, it is clearly and explicitly spelled out. (See, *e.g.*, section 10—5(b)(7) of the child abduction statute

(Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(7)).) None of these factors are presumed by the drafters of that statute to be inherent in the term "parent" itself. Consequently, if the meaning of the word "parent" itself, as used in the child abduction statute, were to determine the meaning of that word under the kidnapping statute, it would be consistent with its dictionary definition, denoting only the biological, blood relationship with the offspring.

■ Furthermore, there is no reason to presuppose that the legislature ever intended that the kidnapping statute encompass parental abductions as does the child abduction statute. Historically, all parents were excluded from kidnapping statutes[2] and are explicitly excluded from the provisions of the Federal kidnapping statute (18 U.S.C. §1201(a) (1988)). (See Comment, *The Tort of Custodial Interference— Toward a More Complete Remedy to Parental Kidnappings*, 1983 U. Ill. L. Rev. 229, 234-35.) In fact, it was this pattern of exclusion which led to the enactment of child abduction statutes by various States, including Illinois, specifically designed to protect the custodial right of one parent from the abductive abuses of another. (See Fleck, *Child Snatching by Parents: What Legal Remedies for "Flee and Plea"?* 55 Chi.-Kent L. Rev. 303, 313-14 (1979).) Thus, the child abduction statute was not designed to be coextensive with the kidnapping statute but rather to open as a new frontier the area of parental abduction which the kidnapping statute was not intended to reach.[3]

The State has urged that the court look to the quality of the relationship between the putative father and the child to determine whether the kidnapping statute applies. The State contends that because this defendant has no custodial rights to the child, did not contribute to the child's support and has not established meaningful emotional ties with the child, the parental consent required under the

---

[2]The Laws of England specifically provided that "no person who shall have claimed to be the father of an illegitimate child, or to have any right to the possession of such child, shall be liable to be prosecuted by virtue hereof (of child stealing), on account of his getting possession of such child, or taking such child out of the possession of the mother, or any other person having the lawful charge thereof." 4 W. Blackstone Commentaries, *Of Public Wrongs: Of Offences Against the Public Health, and the Public Police or Economy*, 168 n. 26 (1863). See generally Fleck, *Child Snatching by Parents: What Legal Remedies for "Flee and Plea"?* 55 Chi.-Kent L. Rev. 303, 313 n.52.

[3]Since its enactment in 1979, the Illinois child abduction statute has developed from legislation directed at the specific problem of the violation of a court order awarding custody (Ill. Rev. Stat. 1979, ch. 38, par. 10—5) to the current legislation which covers a broad range of child abduction and child snatching problems (Ill. Rev. Stat. 1989, ch. 38, par. 10—5).

kidnapping statute should not be deemed to apply to this defendant. In effect, the State would have this court inject, by judicial fiat, legal and societal values into the term "parent" that reach far beyond the plain meaning of the term itself.

■ There is no question that the legislature would be free under the kidnapping statute to distinguish between parents based upon their relative right to custody of a child. It has in fact done so under the child abduction statute. Moreover, there is little doubt that the legislature would be free in enacting a kidnapping statute to make qualitative distinctions predicated upon the degree of interest or commitment of a putative father towards the child. (See *Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208; *Lehr v. Robertson* (1983), 463 U.S. 248, 77 L. Ed. 2d 614, 103 S. Ct. 2985 (where such facts were considered by the United States Supreme Court in determining the scope of a putative father's constitutionally protected interest in his offspring).) However, such delineations would have to be incorporated into a criminal statute by legislative articulation so as to provide sufficient standards and guidelines to satisfy the requirements of due process. In order to avoid a due process-vagueness challenge, a "statute must give a person of ordinary intelligence a reasonable opportunity to know what conduct is lawful or unlawful" and "provide standards, so as to avoid arbitrary and discriminatory enforcement and application by police officers, judges and juries." (*People v. O'Donnell* (1987), 116 Ill. 2d 517, 522, 508 N.E.2d 1066, 1068.) Without the articulation of such standards and guidelines by the legislature, this court is not free to devise its own catalogue of distinctions among the infinite variety of parental relationships or patterns of interaction between a parent and child.

The result we reach in this case is consistent with the decision in *People v. Shephard* (1988), 171 Ill. App. 3d 977, 525 N.E.2d 1102. There, the defendant, an unmarried father, was charged with the aggravated kidnapping and child abduction of his natural child from her mother's home. After the trial court found defendant to be the natural father of the victim, it refused to convict him of aggravated kidnapping because an element of the offense was the lack of parental consent. Nonetheless, it did convict him of child abduction. On appeal, the reviewing court affirmed and, by doing so, tacitly agreed with the trial court that biological parenthood alone is a defense to an aggravated kidnapping charge and may be established at the trial of the charge. Similarly, in the present case, the trial court acknowledged that defendant was the natural father of the victim and, additionally, that fact was undisputed in the evidence. As with *Shephard*, the fact

that defendant was a biological parent establishes a defense to the aggravated kidnapping charge.

■■■ The case of *People v. Marin* (1971), 48 Ill. 2d 205, 269 N.E.2d 303, is also on point. *Marin* involved the question whether individuals could be convicted of the aggravated kidnapping of a seven-year-old child under circumstances where they agreed with the father of that child to take the child for purposes of extorting money from his grandfather. Without considering the nature of the father-child relationship or even the manner or motive of the taking, the court found the father's agreement to the plan indicated his consent to the taking and stated:

"[T]here can be no kidnapping of a child under the age of 13 if the confinement occurs with the consent of his parent. And there can be no aggravated kidnapping unless there is a kidnapping." (*Marin*, 48 Ill. 2d at 210, 269 N.E.2d at 305.)

Similarly, in the present case, defendant cannot be convicted of aggravated kidnapping. Though his relationship with his daughter was minimal and the circumstances of the taking were most serious, he, like the father in *Marin*, is a parent and, therefore, removed from the scope of the aggravated kidnapping statute.

■■■ The State argues that if we overturn defendant's conviction for aggravated kidnapping we would "open the door for strangers to suddenly appear and upset children's emotions and the stability of their environment." We disagree. The legislature has provided other criminal statutes to protect children against abduction, whether by force or otherwise by a putative father. As previously discussed, the child abduction statute (Ill. Rev. Stat. 1987, ch. 38, par. 10—5) is specifically designed to protect a child from abduction by a putative father such as the defendant. Section 10—5(b)(3) of that statute (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(3)) provides that a person commits the felony of child abduction when he "[i]ntentionally conceals, detains or removes the child without the consent of the mother or lawful custodian of the child if the person is a putative father and has not established paternity of the child." The child abduction statute further provides that aggravation can be found and a more severe sentence imposed in the event, as in this case, the court finds "that the defendant committed the abduction while armed with a deadly weapon." (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(d)(5).) In the present case, the State did charge defendant with a violation of the child abduction statute, but under a different provision, section 10—5(b)(2) (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(2)), which required proof that a court order awarding custody was violated. When upon trial

the State was unable to prove that such a court order was entered, the trial court directed a finding on that charge.

■■ Additionally, the aggravated unlawful restraint statute (Ill. Rev. Stat. 1987, ch. 38, par. 10—3.1) protects against the type of conduct involved in the present case. That statute provides that a person commits the felony of aggravated unlawful restraint when he knowingly and without authority detains another with the use of a deadly weapon. In the present case, the State did charge defendant with aggravated unlawful restraint and obtained a finding of guilt on that charge. But, the trial court vacated the finding of guilt on the basis that it was a lesser offense of the aggravated kidnapping. See *People v. Kittle* (1986), 140 Ill. App. 3d 951, 957, 489 N.E.2d 481, 485.

■■ ■ The circumstances in this case clearly support an aggravated unlawful restraint conviction. An aggravated unlawful restraint occurs when a person knowingly and without legal authority detains another while using a deadly weapon. (Ill. Rev. Stat. 1987, ch. 38, par. 10—3.1.) Proof of defendant's seizure and detention of his daughter with his knife drawn was sufficient to establish his guilt of aggravated unlawful restraint beyond a reasonable doubt. (See *People v. Jones* (1981), 93 Ill. App. 3d 475, 417 N.E.2d 647.) Upon the remand of this matter to the trial court, the finding of guilty on the unlawful restraint charge may be reinstated. See *People v. Smith* (1980), 91 Ill. App. 3d 523, 414 N.E.2d 1117.

Accordingly, we reverse defendant's aggravated kidnapping conviction and remand this matter to the trial court to permit it to reinstate and sentence defendant on the aggravated unlawful restraint conviction.

Reversed and remanded.

COCCIA, P.J., and LORENZ, J., concur.