THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELISSA A. MERRITT, Defendant-Appellant.

Fourth District    No. 4—01—0711

Opinion filed September 30, 2003.

Charles M. Schiedel and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE TURNER delivered the opinion of the court:

Defendant, Melissa A. Merritt, appeals her conviction for aggravated driving under the influence (DUI) (625 ILCS 5/11—501(d)(1)(C) (West 2000)), asserting the State failed to prove that her alcohol consumption was a proximate cause of another's injuries. We affirm.

## I. BACKGROUND

On November 10, 2000, at about 5:20 p.m., defendant was driving her van southbound on Towanda Avenue in Bloomington, Illinois, when she hit the victim, John Stevens, as he jogged across the road wearing headphones. The victim died from the injuries he sustained in

the accident. A Breathalyzer test conducted at 7:12 that evening indicated defendant had an alcohol level of 0.12. The tests performed on defendant's blood and urine samples taken at 8 p.m. showed a blood-alcohol level of 0.097 with no trace of drugs.

In December 2000, a grand jury indicted defendant on two counts of reckless homicide (720 ILCS 5/9—3(a) (West 2000)), two counts of aggravated DUI (625 ILCS 5/11—501(d)(1)(C) (West 2000)), two counts of DUI (625 ILCS 5/11—501(a)(1), (a)(2) (West 2000)), operation of an uninsured motor vehicle (625 ILCS 5/3—707 (West 2000)), and unlawful possession of cannabis (720 ILCS 550/4(a) (West 2000)). In March 2001, the State charged defendant with speeding (625 ILCS 5/11—601(b) (West 2000)) and driving too fast for conditions (625 ILCS 5/11—601(a) (West 2000)).

At the beginning of the May 2001 bench trial, defendant entered a plea of guilty to the unlawful-possession-of-cannabis and operation-of-an-uninsured-motor-vehicle charges. The trial court also granted the State's motion to dismiss the driving-too-fast-for-conditions charge.

James Crabtree testified he was driving northbound on Towanda Avenue at the time of the accident. Crabtree stated the conditions were dry and clear on the evening of November 10, 2000. According to Crabtree, it was already dark but the light was good with several streetlights and car headlights. As he approached the intersection of Fleetwood and Towanda, Crabtree saw the victim turn off Fleetwood and jog in the grass along Towanda. It appeared the victim was going to cross the street. Crabtree lost sight of the victim and stopped on Towanda to make a left turn onto Fleetwood. As he was waiting to make his turn, he heard a loud thump noise and then saw a body rolling down the street in his rearview mirror. Before the thump, he did not hear a horn or tires. Crabtree stated that, if he had been going southbound, he would have slowed down because the victim looked like he was going "to dart out" into the road.

Jennifer Darrow was traveling southbound on Towanda Avenue at the time of the accident. Darrow described the weather as clear and the area as "pretty dark." She was in the right lane (adjacent to the curb) when defendant's red van passed her in the left lane approximately a half block before the intersection of Towanda and Fleetwood. As defendant passed Darrow, she swerved a bit. Darrow estimated defendant was going 45 miles per hour.

After noticing defendant's van, Darrow noticed the victim standing on the side of the road and looking at the oncoming traffic. As soon as she saw the victim, she slowed down her vehicle. The victim was about four to five car lengths in front of Darrow when he stepped onto the road. The victim continued to cross Darrow's lane. He stopped

on the hash marks separating the southbound lanes, hesitated for a moment, and then ran. The victim was just off the hash marks when defendant's van struck him. Before impact, Darrow did not see defendant's van slow down, any evasive maneuvers by defendant, or the van's brake lights go on or hear the squealing of tires, braking of tires, or a horn. After impact, the van came to a stop in the curbside lane and never crossed into the northbound lanes. After she saw the accident, Darrow had no trouble stopping her vehicle.

Ruth Farkas was driving northbound on Towanda Avenue at the time of the accident. She too described the weather as clear and the area as dark. As she was driving in the passing lane, Farkas noticed the victim on the grass alongside the southbound lanes. She continued to notice him standing in the grass. After Farkas changed lanes, she saw headlights veer toward her and saw defendant's van enter the northbound passing lane. Farkas did not see the impact but saw the victim's body come off the van.

Richard Pearson was traveling in the northbound curbside lane when the accident occurred. He did not see the victim before the accident. He did see something pass in front of the headlights of the southbound van and then saw the vehicle swerve to the left. Pearson testified defendant was traveling the same speed as the rest of the traffic.

Police officer Steve Sicinski responded to a dispatch at 5:26 p.m. Upon arrival, he observed defendant's van with front-end damage and the victim lying in the street. Officer Sicinski learned defendant was driving the van but did not immediately interview her because she was extremely upset.

After about 5 to 10 minutes, he spoke with defendant. Defendant stated she was near the intersection of Towanda and Fleetwood when she saw the victim in the grass running southbound. The victim then darted out into the street. At that time, defendant applied her brakes and performed an evasive maneuver to avoid striking him but still struck the victim. Defendant stated she was driving in the curbside lane at 35 miles per hour when the accident occurred. Officer Sicinski did not observe any skid marks at the scene.

As he spoke with defendant, Officer Sicinski noticed an odor of alcohol on defendant's breath and her eyes were bloodshot. Even though defendant denied drinking any alcohol, Officer Sicinski had defendant do some field-sobriety tests. Defendant failed to follow directions while doing the walk-and-turn test and the one-legged-stand test. Defendant also performed the finger-to-nose test incorrectly four out of the six tries. Based on his observations, Officer Sicinski opined that defendant was intoxicated. Defendant later admitted she had

drunk six to eight beers, ending at about 2 a.m. on November 10, 2000.

Bloomington Detective John Atteberry testified he arrived at the scene of the accident at about 5:30 p.m., at which time it was dusk. According to Atteberry, a little sunlight was present.

Police officer Oliver Love arrived at the scene of the accident as Officer Sicinski was finishing field-sobriety tests on defendant. Officer Love spoke with defendant for about seven to eight minutes at the scene. Defendant admitted that she was going 35 miles per hour, five miles per hour over the legal speed limit, at the time of the accident. Officer Love smelled alcohol coming from defendant and noticed defendant's eyes were glazed over and bloodshot and her speech was slurred. Based on his experience, Officer Love opined defendant was under the influence of alcohol.

Kristen Devitt, a former McLean County probation officer, was visiting some former coworkers on the evening of November 10, 2000, when Officer Sicinski asked her to observe defendant while defendant used the rest room. Devitt testified defendant smelled like alcohol, spoke slowly and with a little bit of a slur, had glassy and bloodshot eyes, and swayed while walking and sitting. Defendant swiped at the toilet paper once and missed it. Devitt stated defendant appeared to be moderately intoxicated.

Dr. Bryan Mitchell, a forensic pathologist, performed the autopsy on the victim. Dr. Mitchell concluded the victim's cause of death was cranial cervical injuries as a consequence of a pedestrian-versus-motor-vehicle mishap.

Police officer David White, an accident reconstructionist, analyzed the scene of the accident. He testified he saw no skid marks on the roadway relating to the accident. McLean County deputy coroner Tony Becker also analyzed the scene. Becker estimated defendant was traveling 45 miles per hour, plus or minus four, at the time of the accident.

Judy Merritt, defendant's mother, and Christopher Bartosik, defendant's boyfriend, both testified they talked with defendant after the accident, and she did not appear intoxicated.

At the conclusion of the trial, the trial court found defendant guilty of all the charges except for the two reckless-homicide charges. As to the reckless-homicide charges, the trial court found the State failed to prove beyond a reasonable doubt that defendant had a conscious disregard of a substantial and unjustifiable risk where defendant (1) had a right to be in the lane in which she was driving, (2) did not believe the victim would cross in front of her, and (3) was entitled to a reasonable belief that a jogger would not cross in front of

her. Regarding the aggravated-DUI charges, the trial court found the victim's actions were a proximate cause of his fatal injuries. The court also found defendant's failure to react in any way prior to the collision to what she should have observed was also a proximate cause. The court noted defendant should have seen the victim enter the street and slowed her vehicle accordingly but did not because she was impaired by alcohol.

After a July 2001 sentencing hearing, the trial court sentenced defendant to four years' imprisonment and ordered her to pay $15,095.61 in restitution and $1,315 in fines and fees on the aggravated-DUI conviction. The court also ordered her to pay a $500 fine for her operation-of-an-uninsured-motor-vehicle conviction and $610 in fines and fees for her unlawful-possession-of-cannabis conviction.

In August 2001, the trial court denied defendant's motion to reconsider sentence. This appeal followed.

## II. ANALYSIS

Defendant contends the State failed to prove defendant guilty beyond a reasonable doubt of aggravated DUI because it failed to prove defendant's alcohol consumption was a proximate cause of the victim's death.

■ ■ When considering a defendant's challenge to the sufficiency of the evidence, the question for the reviewing court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Proof beyond a reasonable doubt does not require the exclusion of every possible doubt. *People v. Shevock*, 335 Ill. App. 3d 1031, 1037, 782 N.E.2d 949, 954 (2003). A person commits aggravated DUI when he or she drives a vehicle while under the influence of alcohol and is involved in a motor vehicle accident that results in great bodily harm to another, when the DUI violation was a proximate cause of the injuries. 625 ILCS 5/11—501(d)(1)(C) (West 2000); *People v. Latto*, 304 Ill. App. 3d 791, 803, 710 N.E.2d 72, 81 (1999).

■ Here, the court concluded defendant's driving while under the influence of alcohol was a proximate cause of the victim's death based on its findings that (1) sufficient time did exist for defendant to take greater preventive action if she had been attentive and saw the victim enter the roadway; and (2) defendant's alcohol consumption impaired her ability to observe, to promptly and accurately assess, to make decisions, and to take prompt action.

Circumstantial evidence alone is sufficient to sustain a conviction

where it satisfies proof beyond a reasonable doubt of the elements of the crime charged. *People v. Pollock*, 202 Ill. 2d 189, 217, 780 N.E.2d 669, 685 (2002). The State presented sufficient evidence from which the trial court could have found beyond a reasonable doubt defendant's alcohol consumption impaired her driving ability, and thus her driving while under the influence of alcohol was a proximate cause of the victim's death.

Several witnesses testified as to defendant's impaired physical and mental abilities. Officer Sicinski testified defendant had difficulty following directions during the field-sobriety tests. Officer Love and Devitt testified defendant's eyes were glazed over and her speech was slurred. Those observations are supported by defendant's alcohol level. Under Illinois law, a person with an alcohol concentration over 0.08 is presumed to be under the influence of alcohol. 625 ILCS 5/11—501.2(b)(3) (West 2000). Almost two hours after the accident, defendant's alcohol level was 0.12, well above the 0.08.

Moreover, the State presented evidence that other drivers observed the victim despite the conditions and surroundings. Several witnesses saw the victim jogging even though it was dark. Darrow, another southbound driver with the same view as defendant, was able to see the victim enter the roadway and in response slow her vehicle.

■ The fact that the victim's actions were also a proximate cause of his injuries does not warrant reversal of defendant's conviction. A person commits aggravated DUI when his or her driving under the influence "was *a* proximate cause of the injuries" (emphasis added) (625 ILCS 5/11—501(d)(1)(C) (West 2000)), not the sole and immediate cause of the victim's injuries. See *Latto*, 304 Ill. App. 3d at 800, 710 N.E.2d at 79 (reckless homicide).

■ The trial court's finding that defendant's belief the jogger would not enter the roadway was reasonable also does not require reversal of defendant's conviction. Contrary to defendant's assertion, the court found defendant should have slowed down and taken evasive action when the victim entered the curbside lane, not when defendant first observed the victim. The court's oral findings that (1) defendant reasonably believed the victim would not enter the roadway and (2) defendant should have seen the victim enter the curbside lane and then taken evasive action are not illogical. The court found defendant had time to take preventive measures after the victim entered the roadway and failed to do so because of her alcohol impairment. Accordingly, we do not find the trial court's acquittal of defendant on the reckless-homicide charges inconsistent with its conviction on the aggravated-DUI charges.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT and McCULLOUGH, JJ., concur.