No. 3--08--0233

Filed August 31, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07--CF--183 |
| CHARETTA T. WILSON, | ) ) | Honorable Stuart P. Borden, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the opinion of the court:

Defendant, Charetta T. Wilson, appeals her conviction for resisting a peace officer resulting in an injury to the officer. Specifically, she challenges: (1) the wording of a modified Illinois pattern jury instruction; and (2) her trial counsel's effectiveness.

FACTS

Defendant proceeded to a jury trial on two charges: resisting a peace officer resulting in an injury to the officer (720 ILCS 5/31--1(a--7) (West 2006)); and aggravated assault (720

ILCS 5/12--2(a)(6) (West 2006)). Bradley Scott, a Peoria police officer, testified that on January 21, 2007, he was dispatched to a part of Peoria known as Niagra Alley. He was dressed in a standard police-issue uniform, and he observed a large crowd located in the alley. To make his way through the alley, he launched pepper balls at the legs and feet of individuals in the crowd. He then began assisting another officer, Sergeant Venzon, with crowd control when a glass bottle flew past the left side of his body.

Venzon identified defendant as the person who threw the bottle. Scott consequently approached defendant and grabbed her arm. Venzon and Scott attempted to pull defendant down the alley where other officers were located, but she refused to be handcuffed and did not comply with commands to put her hands behind her back. Scott pinned defendant against a wall to facilitate the handcuffing while another officer, Eric Betts, provided assistance. Defendant pushed against the wall and temporarily broke Scott's grasp of her arm. Scott then grabbed defendant's upper arm and forced her to the ground, whereupon she tried to pull her arms underneath her body to keep from being handcuffed. While Scott tried to gain control of defendant's left arm, defendant "rolled along with the pile" and pinned

2

Scott's arm against the ground.  Ultimately, the officers were able to handcuff defendant and take her to a police car.  Scott subsequently received treatment for a sprained wrist at Methodist Hospital.

Officer Betts testified that when he arrived at the scene, he witnessed Scott attempting to arrest defendant, and he helped get defendant to the ground.  Once on the ground, defendant was shifting from side to side.  Betts pulled one of defendant's arms from beneath her body and secured a handcuff to the arm.  Though he did not remember rolling with defendant or losing his balance, he did notice Scott grimace.  He then saw someone throw another bottle that landed near him.  Betts left to pursue the person who threw the bottle.

Lashanda Marizetts testified that she and defendant went to Club 112, which was located in the alley, on January 21, 2007.  Defendant had a cranberry juice and vodka but did not consume any beer or have any reason to possess a beer bottle.  As the club was closing, a fight broke out.  Marizetts and defendant began walking up the alley outside the club when a police officer grabbed defendant.  Marizetts said the officer threw defendant to the ground and placed his knee on her back.  The officer then began striking defendant.

Kecia Wilson, defendant's sister, testified that she was with defendant and Marizetts at the club on January 21, 2007. Several fights broke out when the club closed. Wilson observed police officers grab defendant, and she testified that the officers would not tell defendant why they were arresting her. They took defendant to the ground and began punching her. Defendant was moving on the ground because the officers were on her back and pulling her hair.

Defendant testified that she and some friends went to the club to celebrate her birthday. When the club closed, she and her friends tried to leave, but due to several fights outside they waited until most of the club's patrons had left. As they walked from the club, a police officer grabbed defendant's arm. Defendant pulled her arm back, and the officer requested that she get against the wall with her hands behind her back. When defendant asked the officer what she had done, the officer threw her against the wall. Another officer then helped throw her to the ground. Defendant said her hands were at her side and not behind her back.

At the jury instruction conference, the State tendered a modified version of the Illinois pattern jury instruction for resisting a peace officer. The modified version added a fourth

4

proposition to which defendant did not object.  The trial court accepted the instruction as modified.  The instruction read:

>"To sustain a charge of Resisting or Obstructing a Peace Officer, the State must prove the following propositions:
>
>First Proposition: That Brad Scott was a peace officer; and
>
>Second Proposition: That the defendant knew Brad Scott was a peace officer; and
>
>Third Proposition: That the defendant knowingly resisted or obstructed the performance of Brad Scott of an authorized act within his official capacity; and
>
>Fourth Proposition: That the defendant's act of resisting was <u>a proximate cause</u> of an injury to Brad Scott."  (Emphasis added.)

At some point during its deliberations, the jury sent a note to the court inquiring:

>"May the propositions on resisting a peace officer be broken down into two separate counts.  Can the injury be separated from the resisting?"

5

Defense counsel noted: "That's the lesser included offense."  The court replied: "Obviously, no, you have chosen not to go there. My answer to this question would be no, you must deliberate based upon the charges before you."  The State and defense counsel both expressed satisfaction with that response.

Ultimately, the jury acquitted defendant on the charge of aggravated assault but found her guilty of resisting a peace officer resulting in an injury to the officer.  The trial court sentenced defendant to 18 months of conditional discharge.  She appeals.

ANALYSIS

Defendant claims she is entitled to a new trial since she "was prejudiced when an inaccurate non-pattern jury instruction was provided to the jury."  Defendant has forfeited this claim. It is well settled that a defendant forfeits review of any putative jury instruction error if she does not object to the instruction or offer any alternative instruction at trial and does not raise the particular instruction issue in her posttrial motion.  *People v. Herron*, 215 Ill. 2d 167, 830 N.E.2d 467 (2005).  Defendant concedes she did not object to the instruction of which she now complains, nor did she raise any issues questioning its propriety in her posttrial motion.  Nevertheless,

6

defendant asserts that the claimed error "constitutes plain error and should be reviewed as such."  In the alternative, defendant asserts that "if the error of failing to properly instruct the jury is not plain error, it should be reviewed under the standard for ineffective assistance of counsel."

There can be no plain error if there was no error at all; counsel cannot be ineffective for failing to challenge a correct instruction.  See *People v. Johnson*, 218 Ill. 2d 125, 842 N.E.2d 714 (2005).  Before we can address defendant's claims of plain error and ineffective assistance, we must determine whether there was error in the first place.  See *Johnson*, 218 Ill. 2d at 139.

Defendant initially contends that the modified instruction incorrectly stated the law.  The statutory language for the charged offense reads:

> "(a) A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor.
>
> ***
>
> (a--7) A person convicted for a

7

> violation of this Section whose violation was
> the <u>proximate cause</u> of an injury to a peace
> officer is guilty of a Class 4 felony."
> (Emphasis added.)  720 ILCS 5/31--1 (West
> 2006).

Defendant argues that the definite article ("the") in the statute and the indefinite article ("a") in the jury instruction have different meanings--"the" being exclusive and "a" being inclusive.  According to this argument, when the legislature used the phrase "the proximate cause" in the statute (resisting a peace officer), it was referring only to the single most immediate or direct cause.  Therefore, defendant contends, the use of "a proximate cause" in the modified instruction permitted a finding of guilt based on a standard lower than the standard required by statute.

Our primary objective in construing any statute is to determine and effectuate the legislature's intent. *Yang v. City of Chicago*, 195 Ill. 2d 96, 745 N.E.2d 541 (2001).  A review of our legislature's use of the phrase "the proximate cause"  leads to the inescapable conclusion that it did not intend its use of the term to equate to the narrow definition argued by defendant.

The legislature has used the term "proximate cause" in 19

8

statutes.  65 ILCS 5/11---152--1 (West 2008); 215 ILCS 5/4 (West 2008); 605 ILCS 125/20 (West 2008); 625 ILCS 5/6--103 (West 2008); 625 ILCS 5/6--208 (West 2008); 625 ILCS 5/11--501 (West 2008); 625 ILCS 5/11--506 (West 2008); 625 ILCS 5/11--610 (West 2008); 625 ILCS 40/5--7 (West 2008); 625 ILCS 45/5--2 (West 2008); 625 ILCS 45/5--16 (West 2008); 720 ILCS 5/12--21.6 (West 2008); 720 ILCS 5/31--1 (West 2008); 735 ILCS 5/2--623 (West 2008); 735 ILCS 5/2--1107.1 (West 2008); 735 ILCS 5/2--1116 (West 2008); 740 ILCS 180/2 (West 2008); 745 ILCS 10/3--109 (West 2008); 745 ILCS 43/15 (West 2008).  The phrase "a proximate cause" appears in 10 of these statutes and "the proximate cause" appears in 9.  Nowhere within the Illinois Compiled Statutes does the legislature define "proximate cause," "a proximate cause," or "the proximate cause."

However, the legislature has used the phrase "more than 50% of the proximate cause" in at least two instances.  (Emphasis added.)  In section 2--1107.1 of the Code of Civil Procedure, the legislature stated that, "[I]f the jury finds that the contributory fault of the plaintiff is more than 50% of the proximate cause," then the plaintiff is barred from recovery. (Emphasis added.) 735 ILCS 5/2--1107.1 (West 2008).  Similarly, in section 2(c)(2) and (2) of the Wrongful Death Act, the legislature again stated that if a beneficiary on whose behalf an action is brought "is more than 50% of the proximate cause of the wrongful death of the decedent," then recovery is barred.  (Emphasis added.)  740 ILCS 180/2(c)(2) (West 2008).  QUERY: if the legislature

9

intended "the proximate cause" to mean the "one most immediate" cause, then how can there ever be less than 100% of "the proximate cause"?  If use of the phrase "the proximate cause" means that there is but one singular cause of an injury, why would the legislature ever use the phrase "more than 50% of the proximate cause," when to do so would render the phrase self-contradictory nonsense?

A definition of proximate cause is, however, contained within Illinois Pattern Jury Instructions, Civil, No. 15.01 (2009) (hereinafter IPI Civil (2009)), which states:

"When I use the expression 'proximate

cause,' I mean a cause which, in the natural

and ordinary course of events, produced the

plaintiff's injury.  It need not be the only

cause, nor the last or nearest cause.  It is

sufficient if it combines with another cause

resulting in injury."  IPI Civil (2009) No. 15.01.

In light of this definition of "proximate cause," changing the article immediately preceding "proximate cause" from "a" to "the" does not change its definition.  It matters not whether one speaks of "the" proximate cause or "a" proximate cause--the meaning is the same.[1]  The

_____

[1]Unlike Justices Holdridge and McDade, I do not find that the use of the article "the" in front of proximate cause creates an ambiguity.  This is the reason I did not discuss legislative

10

definition of the term controls any article preceding it. This reading is consistent with the legislature's use of the phrase "more than 50% of the proximate cause."  735 ILCS 5/2--1107.1 (West 2008); 740 ILCS 180/2(c)(1), (c)(2) (West 2008).

Our interpretation of the statute and term finds support in our supreme court's opinion in *People v. Hudson*, 222 Ill. 2d 392, 856 N.E.2d 1078 (2006).

"In general, Illinois law provides that a defendant may be charged with murder pursuant to the 'proximate cause' theory of felony murder. *People v. Lowery*, 178 Ill. 2d 462 (1997).  The term 'proximate cause' describes two distinct requirements: cause in fact and legal cause. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257-58 (1999).  We have stated, 'We believe that the analogies between civil and criminal cases in which individuals are injured or killed are so close that the principle of proximate cause applies to both classes of cases.  Causal relation is the universal factor common to all legal liability.' *Lowery*, 178 Ill. 2d at 466.  Legal cause 'is essentially a question of foreseeability'; the

history.  However, I plead guilty to going beyond what is necessary in what is perhaps a misguided effort to address concern of those who might disagree with my conclusion that changing the article immediately preceding "proximate cause" does not create an ambiguity.

relevant inquiry is 'whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct.' *Galman*, 188 Ill. 2d at 258. Foreseeability is added to the cause-in-fact requirement because 'even when cause in fact is established, it must be determined that any variation between the result intended \*\*\* and the result actually achieved is not so extraordinary that it would be unfair to hold the defendant responsible for the actual result.' 1 W. LaFave, Substantive Criminal Law §6.4, at 464 (2d ed. 2003). Although foreseeability is a necessary component of a proximate cause analysis, it need not be specifically mentioned in a jury instruction to communicate the idea of 'proximate' to a jury. Thus, the IPI civil jury instruction communicates the definition of 'proximate cause,' as '[any] cause which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]' Illinois Pattern Jury Instructions, Civil, No. 15.01 (2005)." *Hudson*, 222 Ill. 2d at 401-02.

Defendant invites us to equate "the proximate cause" with "sole proximate cause." We must respectfully decline the invitation. Our jurisprudence recognizes the principle of "sole proximate cause" and instructs a jury that "if you decide that the sole proximate cause of injury to

12

the plaintiff was the conduct of some person other than the defendant, than your verdict should be for the defendant." IPI Civil (2008) No. 12.04. Adding the adjective "sole" to the phrase is quite different from simply changing the preceding article from "a" to "the."

The modified instruction at issue contained an accurate statement of the law. Accordingly, there was no error, let alone plain error. As defendant has not met her burden of establishing plain error, we must honor her procedural default. *People v. Hillier*, 237 Ill. 2d 539, 545-48 (2010).

With respect to the ineffective assistance of counsel issue, failure to object to proper conduct cannot render counsel constitutionally ineffective. *Johnson*, 218 Ill. 2d at 139.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

PRESIDING JUSTICE HOLDRIDGE, specially concurring:

Our primary objective in construing a statute is to determine and effectuate the legislature's intent. Yang v. City of Chicago, 195 Ill. 2d 96 (2001). This effort begins with an examination of the statutory language. Texaco-Cities Service Pipeline Co. v. McGaw, 182 Ill. 2d 262 (1998). If the statutory language is ambiguous, we may examine the legislative history. Country Mutual Insurance Co. v. Teachers Insurance Co., 195 Ill. 2d 322 (2001). A statute is ambiguous if it is capable of more than one reasonable interpretation. In re B.C., 176 Ill. 2d 536 (1997).

The parties' arguments, and the observations made in the order of this court, demonstrate

that the disputed language from the resisting-a-peace-officer statute is ambiguous. While it is possible that the legislature intended the definite article ("the") to signal an exclusive sort of proximate cause, it is also possible that the legislature intended no such exclusion--allowing more than the single most immediate or direct cause. Consequently, it is proper to look to the legislative history for guidance.

When the disputed language was being considered on the Senate floor, Senator Petka explained that "it raises the offense of resisting arrest to a Class 4 felony in circumstances where a peace officer suffers harm as a proximate result of the arrest." 92d Ill. Gen. Assem., Senate Proceedings, April 3, 2002, at 115 (statement of Senator Petka). Later, the following colloquy occurred:

"SENATOR CULLERTON:

Senator, for the purposes, I guess, of legislative intent, there's an amendment that we put on the bill that says a person convicted for a violation of this Section whose violation was the proximate cause of an injury to a peace officer is guilty of a Class 4 felony. Could you describe how the -- what the burden of proof would be, who it would be on and what is the burden of proof in order for the State to -- to prove that Section?

PRESIDING OFFICER: (SENATOR WATSON)

Senator Petka.

SENATOR PETKA:

14

First of all, thank you for -- asking that question. The burden of proof will be on the State. It'll be a burden of proof beyond all reasonable doubt. The -- I envision a jury instruction which would hold that the individual to be found guilty of the offense must be found guilty beyond all reasonable doubt and must prove that the injury was proximately related to the action.

PRESIDING OFFICER: (SENATOR WATSON)

Further discussion. Senator Molaro?

SENATOR MOLARO:

Thank you, Mr. President. Would the sponsor yield for a question?

PRESIDING OFFICER: (SENATOR WATSON)

Sponsor indicates he'll yield, Senator Molaro.

SENATOR MOLARO:

For the crime of resisting arrest, where is that classified? Is that a Class A misdemeanor or is that a Class 1 felony, or what is resisting arrest?

PRESIDING OFFICER: (SENATOR WATSON)

Senator Petka.

SENATOR PETKA:

Resisting arrest will remain a Class A misdemeanor, Senator. In those circumstances where a peace officer in effectuating an arrest is injured as a result of that arrest, such as situations where there's a struggle for placing the handcuffs

15

on or it's just a struggle in apprehending the individual who is running, the peace officer suffers great bodily harm, under those circumstances, the -- the charge can be upgraded to a felony." 92d Ill. Gen. Assem., Senate Proceedings, April 4, 2002, at 87-89 (statements of Senators Cullerton, Petka & Molaro)..

This language indicates that the legislature did not attach exclusive significance to the definite article in the phrase "the proximate cause." Rather, the legislature simply meant "proximate cause." As Senator Petka (the sponsor) explained, the State must prove that the officer's injury was "proximately related" to the defendant's resistance or occurred "as a result" of making the arrest. Senator Petka explicitly used the phrase "a proximate result," and the bill passed with his explanation.

In light of this meaning, the modified instruction at issue contained an accurate statement of the law. Accordingly, I would find no reversible error and I agree with the result of this court's disposition.

JUSTICE McDADE, specially concurring:

While I concur in the majority's decision affirming defendant's conviction for resisting a peace officer resulting in an injury to the officer, I write separately to voice my concerns with this result.

On appeal, defendant calls our attention to the fact that the modified version of IPI Criminal 4th No. 22.14, which was tendered to the jury, only required the jury to find that defendant's act of resisting was "a proximate cause" and not "the proximate cause" of Officer

16

Scott's injury.  As the majority has correctly pointed out, the statutory language for the charged offense reads: "the proximate cause."  See 720 ILCS 5/31-1 (West 2006).

Recently, the supreme court in *People v. Brown*, 229 Ill. 2d 374, 382-83 892 N.E.2d 1034, 1041 (2008) stated:

> "When interpreting a statute, our primary objective is to ascertain
> and give effect to the intent of the legislature.  [Citation.]
> Legislative intent is determined by considering the language of the
> statute, given its plain and ordinary meaning, as well as the purpose
> and necessity for the law, the evils sought to be remedied, and
> goals to be achieved.  [Citation.]  Each word, clause and sentence
> of the statute must be given reasonable meaning and not rendered
> superfluous, and we presume the General Assembly did not intend
> absurdity, inconvenience, or injustice.  [Citation.]"

Section 31-1 expressly requires that the State establish that defendant's act of resisting was "the proximate cause" of Officer Scott's injury.  See 720 ILCS 5/31-1(a-7) (West 2006).  Thus, the gravamen of this appeal revolves around the question of whether the modified version of IPI Criminal 4th No. 22.14, which substituted the indefinite article "a" for the definite article "the," constitutes plain error.  While Justice Schmidt and Justice Holdridge ultimately do not apply any plain error analysis due to the fact that they each find the absence of error all together, both apparently find that section 31-1 is ambiguous.  Specifically, Justice Schmidt appears to

17

find ambiguity in light of the fact that he cites 19 other statutes in an attempt to define the term "proximate cause." Slip op. at 8. If section 31-1 were indeed unambiguous it would be unnecessary and inappropriate to resort to sources outside the plain language of the statute. See *People v. Algarin*, 200 Ill. App. 3d 740, 747, 558 N.E.2d 457, 461 (1990).[2]

Justice Holdridge expressly finds section 31-1 to be ambiguous and proceeds to examine the statute's legislative history. I too find section 31-1 to be ambiguous.

After careful review of these outside sources, I acknowledge that an argument can be made that the legislature did not attach exclusive significance to the definite article in the phrase "the proximate cause." My concurrence with the majority's decision is based solely upon this

_____

[2]Justice Schmidt has, however, dropped a footnote asserting that he finds the statute unambiguous. It is legally incorrect to cite and discuss outside sources where the statute in question is itself unambiguous. *People v. Nunez*, 236 Ill. 2d 488, 495, 925 N.E.2d 1083, 1087 (2010) ("When the statutory language is clear and unambiguous, it is unnecessary to resort to other aids of interpretation."); *Solon v. Midwest Medical Records Ass'n.,* 236 Ill. 2d 433, 440, 925 N.E. 2d 1113, 1117 (2010) ("When the statutory language is clear and unambiguous, it must be applied as written, without resort to extrinsic aids of statutory construction"); *In re J.L.* 236 Ill. 2d 329, 339-340, 924 N.E.2d 961, 966 (2010) ("Where the statutory language is clear and unambiguous, it will be given effect as written, without resort to other aids of construction.") Justice Schmidt has elected to "plead guilty" to violating this canon of statutory construction rather than conform the decision to the rule.

18

acknowledgment and the fact that we are charged with ascertaining the legislature's ambiguous intent.

I am left troubled, however, because a principle of statutory construction is that " 'the definite article "the" particularizes the subject which it precedes. *It is a word of limitation as opposed to the indefinite or generalizing force of* "*a*" *or* "*an*." ' " (Emphasis in original.) *Sibenaller v. Milschewski*, 379 Ill. App. 3d 717, 722, 884 N.E.2d 1215, 1219 (2008), quoting *Brooks v. Zabka*, 168 Colo. 265, 269, 450 P.2d 653, 655 (1969). Applying this principle, a compelling argument can be made that the legislature's use of the language "the proximate cause" illustrates an intent to focus on the one most immediate, efficient, and direct cause preceding an injury. See *Robinson v. City of Detroit*, 462 Mich. 439, 459-60, 613 N.W.2d 307, 317 (2000). Alternatively, the language "a proximate cause" merely requires that the State establish that the accused's actions were a contributing cause of the victim's injuries. *People v. Merritt*, 343 Ill. App. 3d 442, 448, 797 N.E.2d 1103, 1107 (2003) (Holding "[a] person commits aggravated DUI when his or her driving under the influence 'was a proximate cause of the injuries' *** [citation], not the sole and immediate cause of the victim's injuries" (emphasis omitted)).

Moreover, because section 31-1 is susceptible to two reasonable and conflicting interpretations, I am concerned that our holding violates the rule of lenity. The supreme court in *People v. Perry*, 224 Ill. 2d 312, 333, 864 N.E.2d 196, 210 (2007), expressly stated:

" '[P]enal statutes, where ambiguous, should be construed to afford

19

lenity to the accused.' [Citation.] In such a circumstance, the

penal statute must be strictly construed in favor of the accused,

with nothing taken by intendment or implication beyond the

obvious or literal meaning of the statute. [Citation.]"

While I am wary of ignoring the rule of lenity simply on the basis of other irrelevant

statutes and Senator Petka's sparse statement that the State must prove that the officer's injury

was "proximately related" to the defendant's resistance (92 Ill. Gen. Assem., Senate Proceedings,

April 4, 2002, at 87-89), I acknowledge that we ultimately do in fact look to the legislative

history of a statute when attempting to ascertain its intent. See *In re Detention of Powell*, 217 Ill.

2d 123, 135, 839 N.E.2d 1008, 1015 (2005). It is my sincere hope, however, that the legislature

takes the opportunity in the future to clarify its intent so that other important cases like this one,

where an individual's conviction is being enhanced from a misdemeanor to a felony, are not

determined on the basis of a senator's two-word utterance.