# Illinois Official Reports

## Appellate Court

---

### *People v. Mumaugh*, 2018 IL App (3d) 140961

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRANDON MUMAUGH, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0961 |
| Filed | January 5, 2018 |
| Rehearing denied | January 5, 2018 |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 13-CF-372; the Hon. H. Chris Ryan, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Dimitrios G. Golfis, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Karen K. Donnelly, State's Attorney, of Ottawa (Patrick Delfino, Lawrence M. Bauer, and Jasmine D. Morton, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Justices McDade and O'Brien concurred in the judgment and opinion. |

¶ 1     After a stipulated bench trial, the defendant, Brandon Mumaugh, was convicted of aggravated driving under the influence of a drug (aggravated DUI) in violation of sections 11-501(a)(6) and 11-501(d)(1)(C) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(6), (d)(1)(C) (West 2012)) and sentenced to two years' imprisonment. The defendant appeals his conviction.

¶ 2                                         FACTS

¶ 3     The trial court conducted a bench trial on October 17, 2014. The parties presented all evidence by stipulation. The following facts are taken from the parties' stipulated evidence.

¶ 4     Mumaugh was 43 years old at the time of trial. He lived in Marseilles and had been a professional truck driver for 27 years. On June 21, 2012, at approximately 10:30 p.m., Mumaugh left work in Ottawa and began driving his GMC Blazer east on I-80 toward Marseilles. He exited the interstate at the Marseilles exit and proceeded south on Highway 15 toward the Marseilles city limits. It was a very dark night with no moonlight.

¶ 5     At the same time Mumaugh was driving home that night, 12-year-old Jennifer Dennis and her friend, 13-year-old Courtney Brown, were walking on the east side of Highway 15, at the edge of the northbound lane. Jennifer and Courtney had sneaked out of Courtney's house to go the dollar store for soda. Finding the store closed, they continued north on Highway 15 in Marseilles toward a gas station, which was also closed. The girls then walked south along Highway 15 on their way back to Courtney's house.

¶ 6     At 10:34 p.m., Maggie Thomas, a 911 dispatcher, received a call from Milan Najdanovich. Najdanovich told Thomas, "I'm on my way into town, and you got two little girls, they've got to be 12 or 14 years old, walking on Marseilles blacktop walking in between Hicks Gas and the Shell station." Najdanovich said that "they've got no reflectors on, no nuttin' Honey, they're goin' to get hit." He added, "[t]hey're wearing dark clothes. I'm really afraid somebody's gonna hit 'em or something." Within 58 seconds of Najdanovich's 911 call, a squad car was dispatched to the scene.

¶ 7     As Courtney and Jennifer walked, Courtney's flip-flop broke, and she bent down to fix it. Mumaugh was driving south on Highway 15 at 50 miles per hour when he saw the white legs of a young girl (Courtney) in the northbound lane. Courtney was about 75 feet away.[1] Within a split second, another young girl, Jennifer, appeared out of nowhere in the southbound lane, immediately in front of Mumaugh's vehicle. Jennifer was wearing black clothes and had her back to Mumaugh. Mumaugh immediately swerved his vehicle to the right to avoid striking Jennifer, but Jennifer was right in front of his vehicle. The left side of his vehicle struck Jennifer. Courtney heard a crash as she was bending over. Mumaugh's vehicle veered off into a ditch on the west side of the highway. Mumaugh immediately exited his vehicle to give aid to Jennifer.[2] He encountered Courtney, who said to him, "I kept telling her to get out of the road.

_____

[1]The parties stipulated that a vehicle traveling 50 miles per hour will travel 73.34 feet in one second.

[2]Mumaugh had been an emergency medical technician (EMT) for approximately 10 years in the 1990s.

I kept telling her she shouldn't walk on the road." Mumaugh and Courtney found Jennifer lying facedown on the east side of the highway. Her breathing was very labored. Courtney called 911. The 911 dispatcher received the call about eight minutes after the Marseilles squad car was dispatched.

¶ 8　　Highway 15 is a paved, two-lane road. At the time of the accident, the posted speed limit was 55 miles per hour. At the location of the accident, there were no lights illuminating the highway. The area is rural, and the highway is surrounded by open fields and bordered by gravel shoulders.

¶ 9　　At the time of the accident, Mark Judd was driving north on Highway 15 north of Marseilles when a Marseilles police squad car passed him with its emergency lights activated. The squad car stopped approximately one mile ahead. The officer exited his vehicle and directed Judd to stop. Judd pulled over and exited his vehicle. The officer, Brian Faber, saw Mumaugh standing over Jennifer, with Courtney standing nearby. Mumaugh told Officer Faber that Jennifer was walking down the middle of the road, that Mumaugh did not see her, and that he hit her with his car. Judd, a former EMT, walked to where Jennifer was lying to see if there was anything he could do to help her. Judd asked Officer Faber to help him assist Jennifer. Officer Faber did not respond. Judd asked Mumaugh to help him turn Jennifer over to make sure she was breathing. Mumaugh assisted Judd.

¶ 10　　Detective Todd Gordon and Officers Ronald Baudino and Thomas Rogel of the Marseilles Police Department subsequently arrived on the scene. A Marseilles ambulance also arrived, rendered aid, and took Jennifer to an area where she could be airlifted to a hospital. Judd then spoke to Courtney, who was sitting in Judd's vehicle. Judd asked her what happened. Courtney told Judd that Jennifer was walking in the middle of the road, kicking a rock. Courtney also told others at the scene that Jennifer was walking in the middle of the road and provided a written statement to that effect.

¶ 11　　Officer Baudino asked Mumaugh if he had been drinking. Mumaugh responded that he had not and offered to take field sobriety tests. After administering field sobriety tests, Officer Baudino told Mumaugh that he was "good" and that he saw no signs of impairment. Mumaugh agreed to be taken by ambulance to OSF Hospital to give blood and urine samples.

¶ 12　　Detective Gordon and Officers Faber and Baudino did not detect any odor of cannabis on Mumaugh's breath or clothing. At no time did they observe anything that would lead them to believe that Mumaugh was under the influence of drugs. Mumaugh did not show any signs of impairment in his actions or senses. Mumaugh told the officers that he had "smoked weed" five days earlier (on June 16, 2012) but had not smoked any marijuana on the day of the accident.

¶ 13　　While at the accident scene, Mumaugh realized that he had a "hitter" pipe in his vehicle, and he knew that the police would probably search the vehicle. To avoid being arrested for possession of the pipe, Mumaugh removed the pipe from the vehicle and discarded it on the side of the road. Mumaugh claimed he did not use the pipe to smoke cannabis at any time that day. He did not have any cannabis on his person or in his vehicle. Officer Rogel saw the hitter pipe (a type of pipe commonly used to smoke cannabis) on the ground next to the ambulance that took Mumaugh to the hospital. The pipe was not warm to the touch, and there was nothing Officer Rogel observed that would lead him to believe that the pipe had been used recently. Officer Rogel secured the pipe as evidence. Marseilles police officers thoroughly searched Mumaugh's vehicle. They found no items of contraband or illegal substances.

¶ 14    Mumaugh told Officer Baudino and Detective Gordon that he was driving south on Highway 15 at about 50 miles per hour when he saw white legs walking on the side of the road. He then noticed a person in his lane. He swerved to the right and went into the ditch to avoid hitting the person, but he struck her with his car.

¶ 15    Adam Diss, a certified accident reconstructionist for the La Salle County State's Attorney's Office, was dispatched to the accident scene. Based on his observations, Diss concluded that the crash occurred around the centerline of Highway 15. Mumaugh's vehicle was traveling south on Highway 15 at approximately 50 miles per hour. Jennifer was walking south on the same road near the centerline when she was struck from behind by Mumaugh's vehicle. There was damage to the left front fender and the left upper edge of the windshield of Mumaugh's vehicle. The headlights were working properly. There was a large amount of change (which Jennifer had on her person at the time of impact) scattered across the northbound lane and some into the southbound lane of Highway 15.

¶ 16    On October 10, 2012, Detective Gordon interviewed Mumaugh and asked him about the hitter pipe that was found on the side of the road at the accident scene. Mumaugh denied that it was his pipe. Detective Gordon collected a buccal swab from Mumaugh that day. A swab of the mouth area of the hitter pipe contained a mixture of DNA profiles from at least two people. A major DNA profile that was identified matched Mumaugh's DNA profile. Additional forensic testing detected 0.2 grams of cannabis collected from the hitter pipe. A chemical analysis performed at the Illinois State Police Joliet Forensic Science Laboratory detected an undetermined quantity of tetrahydrocannabinol (THC) metabolite in Mumaugh's urine.

¶ 17    Jennifer sustained serious injuries as a result of the accident, including an injury to her brain. She was in a coma for several months and suffered permanent disabilities.

¶ 18    During the trial, the prosecutor argued that all he needed to prove was that Mumaugh was driving with cannabis in his system and that an accident occurred during which someone suffered great bodily harm. The prosecutor maintained that the time of day, the speed of Mumaugh's vehicle, and the fact that Jennifer was walking in the middle of the road were irrelevant. Defense counsel argued, *inter alia*, that Mumaugh's driving with THC in his system was not the proximate cause of Jennifer's injury. The prosecutor responded that Mumaugh's driving was a proximate cause of the accident because, (1) had Mumaugh not been driving, there would have been no accident and (2) it was "somewhat foreseeable" that the defendant could be involved in a motor vehicle accident while driving because accidents "occur all the time."

¶ 19    The trial court found Mumaugh guilty of aggravated DUI. The court noted that the evidence was to a large degree undisputed. The court found that Mumaugh was operating a motor vehicle on the highway at a time when cannabis was in his system and that an accident occurred between Mumaugh's vehicle and a pedestrian that caused great bodily harm. Addressing the issue of proximate causation, the court stated that, in *People v. Martin*, 2011 IL 109102, the Illinois Supreme Court "seem[ed] to say it doesn't matter" and "seemed to not concern itself too much with that." The trial court opined that "impairment doesn't seem to be part of the offense here and intent doesn't seem to be part. [*sic*]"

¶ 20    Mumaugh filed a motion to reconsider and for judgment notwithstanding the verdict. He argued, *inter alia*, that the court's reliance on *Martin* was misplaced and that the State had failed to prove proximate causation.

¶ 21    The trial court denied Mumaugh's posttrial motions and sentenced him to two years' imprisonment and one year of mandatory supervised release. The court stayed the sentence until the conclusion of appellate proceedings. Mumaugh filed his notice of appeal that same day. The next day, the trial court amended the judgment order to provide that Mumaugh's sentence would be served at 85%.

¶ 22    This appeal followed.

¶ 23                                    ANALYSIS

¶ 24    On appeal, Mumaugh argues that his conviction should be reversed for two reasons. First, Mumaugh contends that the 2012 version of the aggravated DUI statute under which he was convicted, a strict liability statute which allows for conviction upon proof of *any* amount of marijuana in the defendant's blood without proof of impairment, violates substantive due process and is unconstitutional because it needlessly criminalizes innocent conduct and is therefore not rationally related to the statute's purpose of keeping drug-impaired drivers off the road. Second, the State failed to present evidence sufficient to prove that the defendant's driving was the proximate cause of the victim's injuries, a required element of the offense of aggravated DUI (see 625 ILCS 5/11-501(d)(1)(C) (West 2012)). An appellate court "must avoid the adjudication of constitutional questions when a case can be decided on other grounds." *Marconi v. City of Joliet*, 2013 IL App (3d) 110865, ¶ 16; see also *People v. White*, 2011 IL 109689, ¶¶ 144-48; *Innovative Modular Solutions v. Hazel Crest School District 152.5*, 2012 IL 112052, ¶ 38; *People v. Jackson*, 2013 IL 113986, ¶ 14 ("courts will address constitutional issues only as a last resort, relying whenever possible on nonconstitutional grounds to decide cases"). Accordingly, we will address Mumaugh's proximate causation argument first.

¶ 25    At the time of the accident at issue in this case, section 11-501(a)(6) of the Code provided, in pertinent part, that "[a] person shall not drive *** any vehicle within this State while *** there is *any amount* of a drug, substance, or compound in the person's breath, blood, or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act." (Emphasis added.) 625 ILCS 5/11-501(a)(6) (West 2012).[3] Section 11-501(a)(6) is a strict liability provision. A person may be convicted of violating this provision (which is a misdemeanor offense) if he is found to have *any* concentration of THC in his blood or urine, regardless of whether the level of THC was sufficient to impair the defendant's driving. *Martin*, 2011 IL 109102; see also *People v. Fate*, 159 Ill. 2d 267, 270-71 (1994) (ruling that the statute "creates an absolute bar against driving a motor vehicle following the illegal ingestion of any cannabis or controlled substance" "without regard to physical impairment"). In fact, our supreme court has held that the statute *presumes* impairment. *Martin*, 2011 IL 109102, ¶ 23 ("[T]he legal fiction of presumed impairment that we adopted in the context of driving with a

_____

[3]Public Act 99-697, effective July 29, 2016, amended section 11-501(a)(6). The amended statute no longer criminalizes driving with *any amount* of a drug, substance, or compound in the person's breath, blood, or urine resulting from the unlawful use or consumption of cannabis. It now criminalizes having a concentration of THC of 5 nanograms or more of delta-9-THC per milliliter of whole blood or 10 nanograms or more of delta-9-THC per milliliter of other bodily substance within two hours of driving. See 625 ILCS 5/11-501(a)(6), 11-501.2(a) (West 2016). However, in this case, we shall apply and construe the prior version of the statute, which was in effect at the time of the accident.

blood-alcohol content over 0.10 applies with equal force in the context of drug driving."); see also *Fate*, 159 Ill. 2d at 270; *People v. Ziltz*, 98 Ill. 2d 38 (1983).

¶ 26 A person convicted of violating section 11-501(a)(6) is guilty of aggravated DUI if "the person in committing a violation of subsection (a) was involved in a motor vehicle accident that resulted in great bodily harm or permanent disability or disfigurement to another, when the violation was a proximate cause of the injuries." 625 ILCS 5/11-501(d)(1)(C) (West 2012); see also *Martin*, 2011 IL 109102, ¶ 14 ("Section 11-501 sets forth the elements of a misdemeanor offense, then provides sentencing enhancements based upon the presence of other factors."); *People v. Quigley*, 183 Ill. 2d 1, 10 (1998) ("[A]ggravated DUI occurs when an individual commits some form of misdemeanor DUI, in violation of paragraph (a), and other circumstances are present. The legislature added aggravating factors that change the misdemeanor DUI to a Class 4 felony."); see also *People v. Way*, 2017 IL 120023, ¶ 21.[4]

¶ 27 To obtain a conviction for aggravated DUI, the State is not required to prove that the marijuana or other drug in the defendant's system (or any impairment caused by such drug) was the proximate cause of the victim's injuries; rather, it must merely prove beyond a reasonable doubt that the defendant's *driving* was a proximate cause of his or her injuries. *Martin*, 2011 IL 109102, ¶¶ 20-28; see also *Way*, 2017 IL 120023, ¶ 25 (ruling that, when an aggravated DUI charge is based on a violation of a strict liability DUI provision that does not require proof of impairment, the aggravated DUI provision "requires a causal link only between the physical act of driving and" another person's injury or death (internal quotation marks omitted)). However, proximate cause must be proven by the State in such cases; it is not simply presumed along with the presumption of impairment under section 5/11-501(a)(6). See *Martin*, 2011 IL 109102, ¶¶ 25, 28.

¶ 28 Proximate causation consists of two elements: cause in fact and legal cause. *People v. Hudson*, 222 Ill. 2d 392, 401 (2006); *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257-58 (1999). Cause in fact exists when a defendant's conduct is a material element and a substantial factor in bringing about the injury. *Galman*, 188 Ill. 2d at 258; *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). A defendant's conduct is a material element and a substantial factor in bringing about an injury if, absent that conduct, the injury would not have occurred. *Galman*, 188 Ill. 2d at 258; *Lee*, 152 Ill. 2d at 455. " 'Legal cause,' " by contrast, is essentially a question of foreseeability. *Galman*, 188 Ill. 2d at 258; *Lee*, 152 Ill. 2d at 456. The relevant inquiry is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct. *Galman*, 188 Ill. 2d at 258; *Lee*, 152 Ill. 2d at 456.

¶ 29 In proximate cause disputes, Illinois courts draw a distinction between a condition and a cause. *Galman*, 188 Ill. 2d at 257. "[I]f the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury." *Id.* "The test that should be applied in all proximate cause cases is whether

---

[4]Our supreme court has clarified that (1) "aggravated DUI is simply misdemeanor DUI with an aggravating factor, which turns the offense into a felony" (*Martin*, 2011 IL 109102, ¶ 24) and (2) " '[t]he essential and underlying criminal act, however, remains the same: driving while under the influence. The physical injury caused to others by driving while under the influence produces the felony.' " *Id.* (quoting *Quigley*, 183 Ill. 2d at 10); see also *Way*, 2017 IL 120023, ¶ 21.

the first wrongdoer reasonably might have anticipated the intervening efficient cause as a natural and probable result of the first party's own negligence." *Id.*

¶ 30     Applying these principles in *Galman*, our supreme court held that the defendant's illegal parking of a tanker truck near an intersection was not the proximate cause of a pedestrian's fatal injuries where, instead of crossing the street at the crosswalk (where the view of oncoming traffic was unobstructed), the pedestrian attempted to jaywalk across the street in the middle of the block, immediately in front of the parked tanker truck, where she could not have seen the oncoming traffic. *Id.* at 254-55, 259-62. The court found that the parked tanker truck was a cause in fact of the pedestrian's injuries because, had the truck not been parked illegally at that location, the pedestrian's injuries almost certainly would not have occurred, as her view of the roadway would have been unobstructed. However, the court found that the truck was not the *legal cause* of the pedestrian's injuries because the injury was not the type that a reasonable person would foresee as a likely result of his or her conduct. The court explained that the dispositive question was "whether it was reasonably foreseeable that violating a 'no parking' sign at mid-block would likely result in a pedestrian's ignoring a marked crosswalk at the corner, walking to mid-block, and attempting to cross a designated truck route blindly and in clear violation of the law." *Id.* at 261. The court concluded, "[c]learly, it would not." The court found that the pedestrian's decision to jaywalk, "while undeniably tragic and regrettable, was entirely of her own making." *Id.* The court emphasized that the driver of the tanker truck "neither caused [the pedestrian] to make that decision, nor reasonably could have anticipated that decision as a likely consequence of [his] conduct." *Id.*

¶ 31     In *Reuter v. Korb*, 248 Ill. App. 3d 142 (1993), our appellate court reached a similar conclusion on facts markedly similar to those presented in this case. In *Reuter*, the defendant was driving south in a dark, rural area at approximately 11:25 p.m. when a pedestrian wearing dark clothing suddenly appeared in the center of the defendant's lane. Less than one second later, the defendant's vehicle struck the pedestrian. The defendant was traveling at the posted speed limit (45 miles per hour) at the time. Approximately five minutes before the accident, a motorist had reported to a police officer that he had to swerve to avoid hitting a pedestrian walking in the roadway in the same street. *Id.* at 146-47. Toxicology reports administered after the accident indicated that the pedestrian had a blood alcohol level of 0.298. *Id.* at 149. Our appellate court held that the evidence established that the proximate cause of the accident was the pedestrian's own conduct because the pedestrian had violated the law and "was not in an area where defendant should have known or expected a pedestrian to be." *Id.* at 153.

¶ 32     Likewise, in this case, the State failed to prove beyond a reasonable doubt that Mumaugh's driving was a proximate cause of Jennifer's injuries. There was no evidence that Mumaugh committed any traffic violation or any negligent act at the time of the accident. He passed all field sobriety tests administered at the scene, and the officers who interacted with him did not smell cannabis on his breath or clothes and found no evidence of impairment.[5] He was driving five miles per hour below the posted speed limit at the time of the accident, and there is no

---

[5]The State notes that Mumaugh was carrying a "hitter" pipe in his car at the time of the accident. However, the pipe was not warm at the time the police found it on the accident scene, the police found nothing to suggest that it had been used recently, and nothing in the defendant's car or on his person suggesting that he had been smoking marijuana shortly before the accident. Plus, as noted above, there was no evidence that the defendant was impaired at the time.

evidence that he was distracted or that he veered outside of the southbound lane of traffic at any point (other than during his attempt to avoid striking Jennifer, who was walking near the middle of the road and, according to Mumaugh, suddenly appeared directly in front of him in the southbound lane). Mumaugh's headlights were working properly, and there was no evidence that he could have avoided hitting Jennifer, who appeared immediately in front of his car a split-second before he hit her. The parties stipulated that a car moving at 50 miles per hour travels more than 73 feet in one second. The State did not present evidence establishing that a nonimpaired driver traveling at that speed could have avoided hitting a pedestrian suddenly appearing directly in front of his vehicle. In sum, there is no evidence that Mumaugh did anything as far as his driving was concerned that could have foreseeably caused the accident.

¶ 33    Moreover, like the pedestrians in *Galman* and *Reuter*, Jennifer performed an unforeseeable act that subjected her to extreme danger. Minutes before the accident, Milan Najdanovich drove past Courtney and Jennifer on the highway and called 911 to report that two little girls were walking on the blacktop road "wearing dark clothes" with no reflectors on. Najdanovich said "Honey, they're goin' to get hit *** I'm really afraid somebody's gonna hit 'em or something." Immediately after the accident, Courtney told Mumaugh that Jennifer was walking "on the road," and that she kept telling her to get off the road. When Judd asked Courtney what had happened, Courtney told him that Jennifer was "walking in the middle of the road, kicking a rock." She also told others at the accident scene that Jennifer was walking in the middle of the road. Immediately after the accident, Mumaugh told Officer Faber that Jennifer was walking in the middle of the road when he struck her. Moreover, after investigating the accident scene, Diss, the prosecution's certified accident reconstructionist, concluded that (1) the crash occurred *around the centerline* of Highway 15, (2) Mumaugh's vehicle was traveling south on Highway 15 at approximately 50 miles per hour, and (3) Jennifer was walking south on the same road *near the centerline* when she was struck from behind by Mumaugh's vehicle.

¶ 34    In a stipulated pretrial statement, Courtney stated that, if she were called to testify, she would testify that Jennifer was "near the fog line" at the time of the accident, "not in the road." This statement cannot establish proximate cause, however, for several reasons. First, it flatly contradicts multiple statements that Courtney made to several witnesses immediately after the accident, when her memory of the events in question was presumably clearer and she had no motivation to lie. It also contradicts Courtney's own prior written statement and all the other evidence, including the conclusion of the State's accident reconstructionist and Mumaugh's statements to police immediately after the accident. Indeed, Courtney's stipulated pretrial statement represents the *only* evidence suggesting that Jennifer *might* not have been walking near the center of the road (or in the southbound traffic lane) at the time of the accident. However, Courtney's stipulated pretrial statement is not definitive because she did not clearly state that Jennifer was not within the traffic lane at the time of the accident. Instead, she stated that Jennifer was "near the fog line" and not "in the road." She did not state that Jennifer was not "on the road." Thus, Courtney's pretrial statement could merely mean that, at the time of the accident, Jennifer was walking near the fog line within the roadway, which would still put her in danger of being hit by southbound traffic.

¶ 35    The State does not attempt to distinguish *Galman* or *Reuter* in its brief on appeal. Instead, the State relies upon several cases wherein our supreme court or our appellate court upheld

convictions for aggravated DUI and found that the defendant's driving was a proximate cause of the victim's injuries or death. However, in each of these cases, there was evidence suggesting that the defendant driver did something illegal or improper that could have foreseeably caused the accident.[6] The State correctly notes that, in order to be guilty of aggravated DUI, the defendant need only be *a* proximate cause of the accident, not the *sole* proximate cause, and that unexpected hazards appearing in the roadway do not negate the defendant's responsibility as a matter of law. However, in this case, there was *no* evidence suggesting that the defendant's driving was even a contributing proximate cause of Jennifer's injuries (other than, perhaps, Courtney's pretrial statement, which is problematic and inconclusive for the reasons stated above). All the other evidence suggests that Jennifer's conduct was the sole proximate cause of her injuries.

¶ 36     In sum, it is simply not foreseeable that a pedestrian would be walking in the middle of a dark, unlit, rural road at 10:30 p.m. on a moonless night wearing dark clothing and no reflectors. Nor would a reasonable person foresee that the accident in the case was the "likely result" of his conduct when he was driving normally (nonnegligently), below the posted speed limit with functioning headlights, and within his proper lane of traffic. Contrary to the State's argument, the fact that "accidents occur all the time" does not render this particular accident foreseeable. The dispositive question is whether the defendant reasonably might have anticipated the accident as a "natural and probable result of [his] own negligence," *i.e.*, whether Jennifer's injury was "of a type that a reasonable person would see as a likely result of his or her conduct." *Galman*, 188 Ill. 2d at 257-58. That is clearly not the case here because there is no evidence that Mumaugh's driving was improper in any way, and at the time of the accident, Jennifer was not in an area where the defendant should have known or expected a pedestrian to be. See *Reuter*, 248 Ill. App. 3d 142.

¶ 37     We will reverse a conviction on the basis of insufficient evidence only where, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the State, the evidence is so insubstantial that no rational trier of fact could find each element of the charged offense beyond a reasonable doubt. *People v. Smith*, 185 Ill. 2d 532, 541 (1999); *People v. Collins*, 106 Ill. 2d 237, 261 (1985); *People v. Ford*, 2015 IL App (3d) 130810, ¶ 17. This is such a case. Proximate cause is an element of the offense of aggravated DUI. 625 ILCS 5/11-501(d)(1)(C) (West 2012); *Martin*, 2011 IL 109102, ¶¶ 25, 28; *People v. Swift*, 2016 IL App (3d) 140604, ¶ 30. Based on the stipulated evidence in this case, no rational trier of fact could find that element proven beyond a reasonable doubt. Thus, even applying the deferential *Collins* standard, the defendant's conviction must be reversed.

¶ 38     After oral arguments in this case, we granted Mumaugh leave to submit our supreme court's recent decision in *Way* as additional authority in support of his argument on appeal.

---

[6]See *Martin*, 2011 IL 109102 (the defendant drove his vehicle across the centerline); *People v. Merrick*, 2012 IL App (3d) 100551 (the defendant's blood alcohol content was 0.212 and the defendant conceded the element of causation); *People v. Swift*, 2016 IL App (3d) 140604 (the defendant had taken his eyes off the road at the time of the accident); *People v. Cook*, 2011 IL App (4th) 090875 (the defendant's blood alcohol content was 0.109 to 0.119 at the time of the accident, which could have allowed the jury to infer that the defendant could have been more alert); *People v. Ikerman*, 2012 IL App (5th) 110299 (the defendant was drunk and speeding); *People v. Merritt*, 343 Ill. App. 3d 442 (2003) (the defendant was intoxicated and speeding); *People v. Johnson*, 392 Ill. App. 3d 127 (2009) (the defendant was impaired and was street racing).

The State contends that *Way* undermines the defendant's argument because it establishes that the defendant bears the burden of proving that the victim's conduct was the sole proximate cause of her injuries. In *Way*, our supreme court held (*inter alia*) that the trial court erred in finding that a defendant charged with aggravated DUI was barred, as a matter of law, from "raising as an affirmative defense" that the traffic accident at issue was caused "solely and exclusively by a sudden unforeseeable medical condition that rendered her incapable of controlling her vehicle." *Way*, 2017 IL 120023, ¶ 31. However, *Way* is distinguishable from this case in one important respect. In *Way*, it was undisputed that the State had "sufficient evidence to show that [the defendant] was at fault" in the accident. (Internal quotation marks omitted.) *Id.* ¶ 29 (defendant's car had "crossed the centerline" and "collided head-on" with the victim's vehicle (internal quotation marks omitted)). Thus, in *Way*, the State discharged its burden of proving that the defendant's driving was *a* proximate cause of the victim's injuries. In this case, by contrast, the State has not met its initial burden of proving that the defendant's driving was a proximate cause of the accident. In any event, even assuming *arguendo* that Mumaugh bore the burden of proving that Jennifer's conduct was the sole proximate cause of her injuries, Mumaugh has discharged that burden.

¶ 39    Because we reverse the defendant's conviction on the issue of proximate causation, we do not address the defendant's alternative constitutional argument. See, *e.g.*, *Marconi*, 2013 IL App (3d) 110865, ¶ 16 (ruling that an appellate court "must avoid the adjudication of constitutional questions when a case can be decided on other grounds").

¶ 40                                    CONCLUSION

¶ 41    For the foregoing reasons, the judgment of the circuit court of La Salle County is reversed.

¶ 42    Reversed.