NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
January 25, 2022
Carla Bender
4th District Appellate
Court, IL

2022 IL App (4th) 190490-U

NOS. 4-19-0490, 4-19-0491, 4-19-0493 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| CARL HOMME, | ) | Nos. 17CF300 |
|     Defendant-Appellant. | ) |     17TR3676 |
| | ) |     17TR3678 |
| | ) | |
| | ) | Honorable |
| | ) | Jennifer Hartmann Bauknecht, |
| | ) | Judge Presiding. |

_____

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The trial court did not err in denying defendant's motion to suppress when, after the burden shifted to the State, it was able to prove the witness's identification was based on his independent recollection.

(2) The trial court did not violate defendant's right to be present at all critical stages when defendant failed to prove he was prejudiced by the court's independent viewing of the video recording from the officer's onboard camera.

(3) The State sufficiently proved defendant guilty of three counts of aggravated driving under the influence (DUI), where it was not required to present any evidence at trial establishing that defendant had prior DUI violations, as his prior DUI convictions were not elements of the offense.

¶ 2    After a bench trial, defendant Carl Homme was convicted of three counts of

aggravated DUI and sentenced to four years' imprisonment. He raises three arguments on appeal.

First, he contends the trial court erred by denying his motion to suppress the witness's identification testimony, which was based on a showup that defendant maintains was unduly suggestive. Second, he argues his due-process rights were violated when he was not present during a critical stage of the proceedings, namely, when the trial court viewed the video recording from the officer's onboard camera. Third, he contends his felony should be reduced to a misdemeanor when the State failed to prove he had been previously convicted of DUI. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        Defendant was charged by information with three counts of aggravated DUI, all Class 2 felonies, based on having two prior DUI convictions (625 ILCS 5/11-501(d)(2)(B) (West 2016)). The State alleged that, on October 4, 2017, defendant (1) drove a green 1995 Ford truck while his alcohol concentration in his blood or breath was 0.08 or more (625 ILCS 5/11-501(a)(1) (West 2016)) (count I), (2) was under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2016)) (count II), and (3) had controlled substances in his blood, breath, or urine resulting from the unlawful use of controlled substances (625 ILCS 5/11-501(a)(6), (d)(1)(H) (West 2016)) (count III). The State combined the prosecution of these felonies with four traffic citations allegedly resulting from the same incident.

¶ 5        On August 28, 2018, defendant filed a motion to suppress and quash, specifically addressing defendant's identification in a showup. Defendant asserted the witness's identification of him as the perpetrator was "unnecessarily suggestive and conducive to irreparable misidentification" as defendant sat handcuffed alone in the back seat of a squad car. Defendant requested any evidence of identification from the showup be suppressed as violative of his due-process rights.

¶ 6        On October 4, 2018, the trial court conducted a hearing on defendant's motion to suppress. James "Bernie" Curtis testified he lived across the street from his business, the Pontiac Greenhouse on East Pinckney, one block from Maple Street and three blocks from Water Street. On October 4, 2017, around 2 p.m., Curtis was heading downtown in his white van. As he was driving, "a vehicle appeared on Water Street and fishtailed very quickly because it had turned onto Maple Street off of Water." Curtis testified he saw the truck sideswipe a black full-sized Dodge pick-up truck parked on the west side of the street. The truck hesitated "for just a second" and then proceeded south. Curtis said he "was afraid it was going to get [him]; but instead it went past [him] very fast; and then in [his] rearview mirror [he] saw it go down and made a sudden turn." The truck passed him on his left. Curtis saw the couple who he suspected owned the Dodge truck (the "Boldt people") standing outside on their front porch.

¶ 7        Counsel asked Curtis what he was specifically looking at as the vehicle passed him. Curtis said he "first of all, saw that the Boldt people were out on their porch; but [he] observed that the individual was just going on. It was a young man. Remember I'm 84." Curtis said he also saw two or three numbers of the license plate. He stopped to tell the Boldt people the numbers, but they told him they had gotten the full license plate number. Curtis described the driver as "wearing a cap and just looked to be in the 30's or so and just kept driving." He said it "all happened very fast."

¶ 8        When Curtis got back to the greenhouse, Pontiac police officer Daron Bagnell arrived to speak with him. As they stood near the police car, Curtis relayed to Bagnell the incident as he described on the witness stand. Bagnell had defendant in the backseat of his police car. Without telling Curtis "anything about the individual or where that individual came from," Bagnell

- 3 -

asked Curtis "if [he] recognized the individual as the one that was in the vehicle that had hit the truck." Curtis said, "[Y]es."

¶ 9        Curtis said the individual in the police car "had a cap on and had a rather bright plaid shirt, different colors; and at that point, it was pretty easy to recognize the individual." Curtis said he also recognized the "stocky" build of the person. He said the driver "was a stocky person. You know, broad shoulders." The driver had long hair going "well below" his cap with a "partial beard." He was Caucasian and "rather tanned." The following exchange occurred:

> "Q. Okay. Did you[,] in seeing a fellow seated alone in the back of the police car[,] assume that this must be the guy?
>
> A. Yes."

¶ 10        On cross-examination, Curtis explained he identified the individual in the back of the police car as the driver because he saw the driver. He said, "It was obvious to me that that was the individual because that's who I saw." He testified as follows:

> "Q. If that wasn't the individual, would you have told Officer Bagnell that that was the guy?
>
> A. No.
>
> Q. Because he's in the back of a squad car. What would you have told him if it wasn't the right guy?
>
> A. No, I wouldn't have told him if it wasn't the person that I saw.
>
> Q. You would have told him he needs to keep looking?
>
> A. Well, I'd leave that up to him.
>
> Q. Okay. Fair enough. Well, I won't go through all the little things that you saw; but you, it was obvious to you at that time?

A. Yes."

¶ 11 On redirect examination, Curtis testified the individual in the back of the police car was not wearing a cap. Nevertheless, it was "obvious" to Curtis that the driver was in the back of the police car based upon his build, "the physical view of the individual," the plaid shirt, the facial feature, his age, and the length of his hair.

¶ 12 Officer Bagnell testified about the procedures involved in a showup, which, he said, was different than a line-up because it was a one-on-one means of identification. Bagnell said he activated his video and audio recording equipment in his car when he placed defendant in the back seat. Bagnell recalled speaking with a mail carrier, Amy Cox, who relayed to Bagnell that Curtis had told her he saw the incident. When he spoke with Curtis at the greenhouse, Bagnell asked him to describe what he saw. Bagnell recalled that Curtis described the truck and "had a very good description of the license plate"—"he was one digit off, and that was just from memory."

¶ 13 Bagnell testified he asked Curtis if he "got a look at the driver, and he said that he did." Bagnell then asked Curtis if he would recognize the driver if he saw him. Bagnell said he told Curtis to "come here and take a look at the guy in the back of my car." Bagnell said he did not have his wireless microphone on him at the time. Bagnell did not recall whether Curtis had given him a description of the person driving. He did not recall the specifics of their conversation. He just knew that Curtis "gave a positive indication that this guy in the back of [his] car resembled the driver of the truck that he saw leave the scene of the crash." Bagnell testified the officers had defendant in custody 18 minutes after the initial call.

¶ 14 After considering the evidence and arguments of counsel, the trial court found defendant met his burden of proving the identification was suggestive. The court noted the burden then shifted to the State to show by clear and convincing evidence that it was the witness's

independent recollection rather than a suggestive identification. The court found Curtis was "a very credible witness." However, the court was concerned about Curtis's description of the driver as having long hair under a cap, which contradicted what was seen on the video recording from the onboard camera where defendant had no hair. The court attributed Curtis's inaccuracy to counsel's "pretty intense questioning" pushing for a description. The court noted this inaccuracy did not change its credibility determination, as Curtis knew the hair color because of the facial hair, knew it was a younger person, knew the driver was "stocky," and was able to describe the driver's shirt. The court specifically found that Curtis's testimony that the driver had longer hair did not cause it to reject all of Curtis's testimony.

¶ 15        The trial court found Curtis "had a very good opportunity to observe the [d]efendant or the suspect at the time the criminal conduct occurred," as they "were driving right at each other." The court also found Curtis was paying attention to details. Although the court noted it "[m]ight have been easier" had Bagnell had his audio recording device turned on during his conversation with Curtis and Curtis's identification of defendant, it was "not a strike against him," as it "certainly doesn't suggest that there was some improper conduct going on on the part of law enforcement because they could have audioed it and didn't audio it." The court further noted Curtis's level of certainty was "very high."

¶ 16        In sum, the trial court found "the evidence show[ed] pretty clearly and convincingly that the, to the extent that the identification was suggestive that, in fact, the identification was made on the independent recollection of Mr. Curtis as to what he saw and not based upon any suggestion or suggestive identification." The court denied defendant's motion to suppress.

¶ 17        On April 2, 2019, the trial court conducted a bench trial. The State called Bagnell, who testified consistently with his testimony at the hearing on defendant's motion to suppress.

However, Bagnell testified at trial that, while talking to defendant in his living room, Bagnell noted the odor of alcohol on defendant's breath. The State next called Curtis, who also testified consistently with his prior testimony.

¶ 18      The State admitted the video recording, asking the court "to take notice of that." The court stated: "You asked me that I would consider the DVD which there's no objection to that, and of course I recall that very clearly." Defendant presented only a copy of his booking photo, showing defendant in a black shirt and with a "kind of stubbly bald head."

¶ 19      The trial court found defendant guilty of three counts of aggravated DUI and three traffic citations. Defendant filed a posttrial motion, renewing his arguments from his previously filed motion to suppress.

¶ 20      On July 9, 2019, the trial court conducted a hearing on defendant's posttrial motion and sentencing. After considering arguments of counsel, the court denied defendant's motion and proceeded to sentence defendant, merging felony counts II and III with count I, to four years in prison plus a two-year mandatory-supervised-release term. The three traffic citations were disposed of with a judgment of conviction and costs. When pronouncing the sentence, the court found defendant's "two prior DUI's [were] built into the charge" and noted it was "not going to double enhance."

¶ 21      This appeal followed.

¶ 22                              II. ANALYSIS

¶ 23                           A. Motion to Suppress

¶ 24      Defendant claims the trial court erred when it denied his motion to suppress Curtis's eyewitness identification of defendant as the driver. He claims, when considering the relevant factors used to evaluate the reliability of the identification, the State failed to show with clear and

- 7 -

convincing evidence that Curtis's identification was the product of his independent recollection. Instead, defendant claims, the evidence showed that Curtis's identification was the result of unduly suggestive procedures.

¶ 25     The State maintains that the trial court properly denied the motion to suppress where defendant failed to meet his burden to prove Curtis's identification was unduly suggestive. We agree with the State.

¶ 26     Criminal defendants have a due-process right to be free from identification procedures that are unduly suggestive and conducive to irreparable mistaken identification. *People v. Jones*, 2017 IL App (1st) 143766, ¶ 27. Our supreme court " 'has approved prompt showups near the scene of the crime as acceptable police procedure designed to aid police in determining whether to continue or to end the search for the culprits.' " *Id.* (quoting *People v. Lippert*, 89 Ill. 2d 171, 188 (1982)).

¶ 27     Courts employ a two-part test to determine whether an identification procedure comports with due process. First, when challenging the propriety of a pretrial identification procedure, the defendant bears the burden of proving the procedure was unduly suggestive and created a substantial likelihood of misidentification. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 95. Second, the State may rebut defendant's showing by "clear and convincing evidence that the witness is identifying the defendant based on his or her independent recollection of the incident." *People v. Brooks*, 187 Ill. 2d 91, 126 (1999). Courts look to the totality of circumstances when deciding whether the identification was unduly suggestive as the defendant claims. *Corral*, 2019 IL App (1st) 171501, ¶ 95. We review the trial court's factual determination on the suggestibility of the identification procedure under a manifest-weight-of-the-evidence standard. *Id.*

¶ 28　　　　In this case, both the trial court and the State conceded, after hearing Curtis's testimony, that there was "some suggestion" in his identification. That is, Curtis testified he assumed defendant was "the guy" after seeing him seated alone in the back of the police car. However, the prosecutor tried to "clear up" Curtis's testimony with further questioning on cross-examination. Curtis then testified it "was obvious" to him it was the driver in the back of the police car "because that's who [he] saw." Curtis clarified he would have told the officer otherwise if it was not the driver regardless of him being seated alone in the back of the police car.

¶ 29　　　　Accepting the trial court's finding that defendant had met his burden of showing the identification was suggestive and the State's concession that there was "some suggestion," we shift our focus to determine whether the State sufficiently met its burden of showing the identification was based not on the suggestive nature of the procedures but on Curtis's independent recollection. See *Brooks*, 187 Ill. 2d at 126 (stating that even if a defendant can meet his burden and prove that an identification was suggestive, the State may overcome this showing by clear and convincing evidence that the eyewitness identified the defendant based on his or her independent recollection of the incident).

¶ 30　　　　When assessing identification testimony, courts generally rely on five factors established in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). *People v. Slim*, 127 Ill. 2d 302, 307 (1989). Those are (1) the witness's opportunity to view the suspect, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's level of certainty, and (5) the length of time between the crime and the identification. *Slim*, 127 Ill. 2d at 307-08. "The conditions need not be perfect and the observation need not be prolonged." *People v. Benson*, 266 Ill. App. 3d 994, 1005 (1994).

¶ 31    First, the record shows Curtis, while in broad daylight, had the opportunity to observe this entire incident. Curtis testified he saw the Ford truck fishtail as it turned onto the same street and hit the parked pickup truck. Curtis saw the Ford truck hesitate, back up, and drive right past him going the opposite direction. He testified he saw the driver and described his appearance as best he could. We agree with the trial court's assessment that Curtis "had a very good opportunity to observe [d]efendant or the suspect at the time the criminal conduct occurred."

¶ 32    Second, Curtis had a heightened degree of attention after seeing the Ford truck fishtail at a high rate of speed as it turned onto the residential street. It was likely this uncommon incident caused Curtis to pay closer attention than normal to this particular vehicle. As evidenced by his testimony, Curtis was obviously paying close attention, as he was able to identify several correct numbers from the Ford's license plate and was able to provide a good general description of the driver.

¶ 33    As to the third factor, the accuracy of the description, the trial court noted this was not a factor that favored the State. The court was troubled that Curtis testified the driver had long hair when it was obvious on the recorded video that he did not. However, the court found the rest of Curtis's description accurate. Curtis said the driver was in his thirties or forties, had a stocky build, had facial hair, and was wearing a ball cap and a plaid shirt. The only inaccuracy in Curtis's description was that he described the driver as having brown hair that fell below his cap. We find it was not completely unreasonable to miss this identifying characteristic when the driver wore a baseball cap and had facial hair, potentially blocking Curtis's actual view of the driver's hair. The court noted Curtis had accurately described the color of defendant's hair, which he could have ascertained from the facial hair. It was also possible that defendant had removed the plaid shirt, leaving the dark colored shirt shown in the video, prior to the officers detaining him. There was

no evidence presented to explain the discrepancy. Overall, as the State suggests, defendant's description of defendant "was pretty accurate."

¶ 34 Fourth, Curtis's testimony suggested he was confident defendant was the driver. He described his level of certainty as "obvious" and "pretty easy to recognize the individual." He neither indicated any uncertainty nor questioned his identification. In fact, he testified he "wouldn't have told [Bagnell] if it wasn't the person that [he] saw." Based on Curtis's testimony, we agree with the trial court that the "level of certainty demonstrated by the witness at the confrontation *** [was] very high."

¶ 35 And fifth, the evidence suggested the identification occurred only approximately 45 minutes after the crime. Courts have found identifications to be reliable even where they were made a considerable time after a crime. See *Corral*, 2019 IL App (1st) 171501, ¶ 81. In this case, the short period of time between the crime and Curtis's identification was a factor that weighed in favor of the State.

¶ 36 After viewing the totality of the circumstances, weighing each factor, and deferring to the trial court's assessment of Curtis's testimony as "very credible," we conclude the manifest weight of the evidence supported the court's determination that Curtis positively identified defendant as the driver through his independent recollection and not as a result of an unduly suggestive procedure. We affirm the court's order denying defendant's motion to suppress. See *People v. Underwood*, 263 Ill. App. 3d 780, 786 (1994) (concluding a "possibly suggestive procedure" did not require reversal where the eyewitness made a positive identification of the defendants).

¶ 37 B. Right to Be Present at Critical Stage

¶ 38       Defendant next contends his due-process rights were violated when the trial court viewed substantive evidence against him in his absence, namely the video recording. In support of his motion to suppress, defendant presented as an exhibit, the video recording from Officer Bagnell's onboard camera. Without objection, the court viewed the evidence privately in chambers. The video recording was also admitted as substantive evidence at trial. For purposes of the bench trial, the court indicated it specifically recalled the contents of the video.

¶ 39       In support of his argument, defendant cites *People v. Lucas*, 2019 IL App (1st) 160501, ¶ 14, where the appellate court found the defendant's absence during the trial court's viewing of the traffic-stop video affected the fairness of the trial because the defendant "was unable to view the evidence against her and aid in her own defense." The court further found that because the defendant was not advised of her right to be present, she could not have effectively waived that right. *Id.* ¶ 14.

¶ 40       Defendant concedes he forfeited his right to raise this issue by not objecting to his claimed error in the trial court proceedings. However, he asks that we review this error despite his forfeiture under the second prong of the plain-error doctrine because, he claims, this error was so serious that it affected the fairness of his trial. He argues his decision whether to testify at trial was affected by his absence. We note the first step in any plan-error analysis is to determine whether a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 41       As this court did in *People v. Myles*, 2020 IL App (4th) 180652, ¶ 62, and for the same reasons, we find *Lucas* distinguishable. In *Lucas*, the trial court explicitly relied on the video of the traffic stop in determining the defendant's guilt. *Lucas*, 2019 IL App (1st) 160501, ¶ 15. Here, as in *Myles*, the video recording was not a significant portion of the evidence in determining defendant's guilt. *Myles*, 2020 IL App (4th) 180652, ¶ 64. Although the trial court indicated it had

reviewed the video recording, the court clearly decided the case on the basis of witness testimony—witnesses who were present and subject to cross-examination. In this case, the video recording was not of the incident itself. The recording showed only the defendant in custody and had no audio. Therefore, the recording was of little value in making any credibility or guilt determinations.

¶ 42    In *Myles*, the defendant argued his constitutional rights were violated when the trial court viewed recordings of the victims' statements. This court cited with approval the First District's decision in *People v. Groebe*, 2019 IL App (1st) 180503, a factually similar case to the case at bar. In *Groebe*, the appellate court rejected the defendant's right-to-be-present claim where the trial court reviewed a video of a DUI traffic stop in chambers. *Groebe*, 2019 IL App (1st) 180503, ¶¶ 46-52. The court found the defendant failed to demonstrate the video evidence was significant, stating, "There is no argument or anything to suggest the trial court's procedure prejudiced defendant's ability to aid in her defense or to decide whether to testify." *Groebe*, 2019 IL App (1st) 180503, ¶¶ 51-52. And there was no indication the trial court gave the video any weight in making its findings. *Groebe*, 2019 IL App (1st) 180503, ¶ 52.

¶ 43    As the courts determined in *Groebe* and *Myles*, we too determine defendant's presence at the video viewing would not have contributed to his opportunity to defend himself against the charges where he had no objection to the court viewing the videos outside of his presence, the witnesses in the video testified in open court where defendant had the opportunity to confront and cross-examine them, and defendant was aware of all the State's evidence in determining whether to testify in his own defense. Because we conclude defendant's right to be present was not violated, we conclude no error occurred. See *Piatkowski*, 225 Ill. 2d at 565. Accordingly, we must honor defendant's procedural default.

¶ 44                          C. Proof of Prior Convictions

¶ 45        Finally, defendant contends his felony conviction of aggravated DUI should be reduced to a Class A misdemeanor where the State presented no evidence to establish the necessary element of prior convictions. Defendant contends this sufficiency-of-the-evidence claim involves a question of statutory construction and, therefore, our review is *de novo*. We agree. See *People v. Newton*, 2018 IL 122958, ¶ 14.

¶ 46        Defendant claims the structure of the aggravated DUI statute indicates a clear legislative intent to make a defendant's prior convictions necessary elements of the offense itself. Indeed, section (d)(1) lists 11 alternatives for enhancing a misdemeanor DUI into a felony aggravated offense. See 625 ILCS 5/11-501(d)(1)(A) to (L) (West 2016). One such alternative is the section under which defendant was charged and convicted. That is, the State alleged defendant committed aggravated DUI because this was his third or subsequent violation. 625 ILCS 5/11-501(d)(1)(A) (West 2016).

¶ 47        Defendant relies on *Zimmerman*, where the supreme court addressed the "very similarly structured 2006 version of the aggravated unlawful use of a weapon [(UUW)] statute." See *People v. Zimmerman*, 239 Ill. 2d 491 (2010). The *Zimmerman* court concluded that the structure of the statute showed the legislature clearly intended to make a previous adjudication of delinquency an element of the offense—an element that the State was required to prove beyond a reasonable doubt. *Id.* at 500. The court rejected the claim that a prior adjudication was merely a sentencing enhancement for the misdemeanor offense of UUW. The court found "[h]ad the legislature intended to make the delinquency adjudication a sentencing enhancement for misdemeanor [UUW], it likely would have placed it in the sentencing subsection of the statute describing that offense." *Id.* at 500-01.

¶ 48 Here, the State distinguishes *Zimmerman* by noting the difference in the structure of the aggravated UUW statute and the aggravated DUI statute. The aggravated UUW statute (720 ILCS 5/24-1.6 (West 2016)) is a separate and distinct statute from the UUW statute (720 ILCS 5/24-1 (West 2016)), whereas the aggravated DUI subsection is codified within the same statute as DUI. We agree with the State.

¶ 49 This court recently addressed this issue when similar challenges and arguments were made. We reiterate here our prior analysis and holding in response to those challenges. See *People v. May*, 2021 IL App (4th) 190893.

¶ 50 Defendant acknowledges our interpretation of section 11-501 is supported by a line of cases that found the existence of prior DUI violations is not an element under section 11-501. See, *e.g.*, *People v. Thompson*, 328 Ill. App. 3d 360, 364 (2002) ("[T]he prior convictions are not elements of the [aggravated DUI] offense." (Emphasis omitted.)); *People v. Robinson*, 368 Ill. App. 3d 963, 977 (2006) ("Prior DUI violations are not an element of an aggravated DUI charge.").

¶ 51 Nevertheless, defendant contends our interpretation of section of 11-501 and any authority supporting that interpretation cannot withstand the supreme court's more recent analysis in *Zimmerman*. We disagree. Contrary to defendant's assertion, the statute construed in *Zimmerman*, section 24-1.6 of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/24-1.6 (West 2006)), is not structurally similar to section 11-501. Section 24-1.6 sets forth the offense of aggravated UUW, an offense separate and distinct from the offense of UUW set forth in section 24-1 of the Criminal Code (*id.* § 24-1). *Zimmerman*, 239 Ill. 2d at 500. Conversely, aggravated DUI is not a separate and distinct criminal offense from simple or misdemeanor DUI. See *People v. Quigley*, 183 Ill. 2d 1, 10 (1998) ("[A]ggravated DUI occurs when an individual commits some form of misdemeanor DUI, in violation of paragraph (a), and other circumstances are present. The

legislature added aggravating factors that change the misdemeanor DUI to a Class 4 felony. The essential and underlying criminal act, however, remains the same: driving while under the influence."). As such, we find the analysis in *Zimmerman* does not change our interpretation of section 11-501.

¶ 52 Defendant also contends our interpretation and any authority supporting that interpretation are illogical, given the supreme court's previous finding in *People v. Martin*, 2011 IL 109102, that subsection (d)(1)(F) sets forth an essential element of the offense of aggravated DUI, and its previous pronouncement in *Zimmerman*, 239 Ill. 2d at 500, that "it would be illogical for the General Assembly to include a sentence-enhancing factor in a list with eight other factors which constitute an element of the offense." We disagree. Contrary to defendant's assertion, *Martin* did not find subsection (d)(1)(F) set forth an essential element; instead, the court merely found the proximate cause requirement of that subsection was proven beyond a reasonable doubt. *Martin*, 2011 IL 109102, ¶¶ 20, 28. As discussed above, sentencing enhancement factors must be proven beyond a reasonable doubt. In fact, we note the supreme court in *Martin* emphasized its position that aggravated DUI is not a separate offense—"aggravated DUI is simply misdemeanor DUI with an aggravating factor, which turns the offense into a felony." *Id.* ¶ 24.

¶ 53 Defendant also cites *People v. Mumaugh*, 2018 IL App (3d) 140961, in support of his contention that the factors set forth in subsection (d)(1) are essential elements. In that case, the dispute concerned whether the State proved the proximate cause requirement under section 11-501(d)(1)(C). *Id.* ¶ 24. In addressing that dispute, the court stated the proximate cause requirement was an element of the offense of aggravated DUI. *Id.* ¶¶ 24, 37. To the extent the court in *Mumaugh* found section 11-501(d)(1)(C) set forth an essential element as opposed to a sentencing enhancement factor that had to be proven, we disagree with that position. In fact, we

note another panel of that district issued a recent order rejecting that position and interpreting section 11-501 in the same manner set forth in this order and in our opinion in *May*. See *People v. Brose*, 2021 IL App (3d) 180630-U, ¶ 18 ("[T]he unambiguous structure reveals the legislature's intent that subsections (c) and (d) provide sentence enhancements for successive DUI convictions rather than additional elements of the offense.").

¶ 54       In a final attempt to discredit our interpretation, defendant quotes the following statement and parenthetical citation from the supreme court in *People ex rel. Glasgow v. Carlson*, 2016 IL 120544, ¶ 23:

> "[T]he DUI statute 'operates just as any other statute which initially sets forth the elements of the offenses, and then, in a separate section, provides sentencing classifications based on other factors.' [*Id.*] (citing *People v. Van Schoyck*, 232 Ill. 2d 330, 337 (2009))."

Defendant contends "[t]he various types of aggravated DUI offenses are contained in one subsection, and the corresponding penalties are contained in a separate subsection. [Citations.]" Thus, he claims, his prior DUI violations were not mere sentencing enhancements but were elements of the crime that the State failed to prove beyond a reasonable doubt. We disagree. The characterization of subsection (d)(1) as setting forth a list of "alternative elements" is not a pronouncement that those "alternative elements" are, in fact, essential elements that must be proven at trial as opposed to sentencing enhancement factors.

¶ 55       In summary, we reject defendant's position that the State was required to present evidence at trial establishing that he had prior DUI violations in order to prove him guilty of counts I, II, and III. Defendant has otherwise not presented any alternative basis to attack the sufficiency of the evidence to sustain his convictions.

¶ 56                                    III. CONCLUSION

¶ 57          For the foregoing reasons, we affirm the trial court's judgment.

¶ 58          Affirmed.